STATE OF NEBRASKA, APPELLEE, v. JACK MARION, APPELLANT.

119 N. W. 2d 164

Filed January 25, 1963. No. 35332.

O'Sullivan & O'Sullivan, for appellant.

Clarence A. H. Meyer, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

The defendant, Jack Marion, was charged with the crime of murder in the second degree. The jury returned a verdict of guilty, and defendant was sentenced to a term of 15 years at hard labor in the State Penitentiary. The case is before this court for review.

The evidence shows that defendant called the police department of the city of Omaha about 2:30 a.m. on December 3, 1960, stating that his wife needed the rescue squad, and to send an ambulance. Police patrolmen were immediately dispatched to the home of the defendant. Two patrolmen testified that they found Martha Ann Marion, the wife of the defendant, dying on a bed in the home. Her chest was covered with blood from a bullet wound. A .25-calibre automatic

pistol was found on the dresser. A shell was in the firing chamber and one shell remained in the magazine. Two spent cartridges were found on the floor near the bed. One slug was found on the bed near the deceased and another was found on the bed the next day. Defendant told the police that he pulled the gun from his pocket and that it went off and hit the deceased. One of the two policemen testified that defendant was in an intoxicated condition.

One Opal Lee, a cousin of the deceased, lived with the Marions and slept in an adjoining bedroom with the children. She testified that she was awakened by an argument between defendant and his wife. She went into the Marion bedroom and asked them to quiet down. She testified that defendant had the gun in his hand at that time and that defendant and deceased were "fighting." She heard the defendant say to his wife that if she kept on doing what she was doing he would beat her up. Opal returned to her room and went back to sleep. She was again awakened by a shot, the sound of which came from the Marion bedroom. At the request of defendant she went to a neighbor to call the police and an ambulance. She was unable to arouse the neighbor and did not make the call.

A physician who performed an autopsy on the body of the deceased testified that the body had been pierced in three places. The entrance and exit wounds were plainly discernible. One bullet passed through the left hand at the base of the thumb. A bullet also passed through the fleshy part of the right arm about 4 inches below the elbow. He testified that these two bullet wounds could have been caused by the same bullet. Another bullet entered the chest about 2 inches to the left of the midline and left the body about 2 inches to the left of the spine. This bullet passed through the lobes of the lung and was the cause of death.

The defendant testified to the following: On the afternoon of December 2, 1960, he picked up his wife

at the place of her employment and took her home in his automobile. He then returned to the liquor store where he worked. At about 10:30 p.m. he observed Opal Lee and his 2½-year-old daughter near the place of his employment. He took them home in his automobile and returned to his work. His wife was not home at that time. He completed his work about 2 a.m. and went home, arriving there about 2:20 a.m. When he left the liquor store he put a gun in his pocket. He said the gun had been left with him 3 weeks before by a friend as security for a small loan. He took it home because his superiors had told him that no firearms were to be kept about the liquor store.

Upon his arrival home he walked directly to the bedroom without removing his overcoat. The light was on. His wife was sitting on the bed in nightclothes. He asked her where she had been. She answered that she had been over to her cousins. He said he thought she should have stayed with the children instead of sending them to a show with Opal Lee. He said there was no argument or loud talking. He pulled the gun from the side pocket of his overcoat to lay it on the dresser. As he pulled it out of his pocket it went off and hit the deceased. He said the gun struck nothing as he lifted it from his pocket. He did not pull the trigger. He said there was but one shot fired and it was accidental. He testified that he had his finger inside the trigger guard when he took the gun from his pocket. He at no time looked to see if the pistol was on "safety." He did not know that a shell was in firing position. He said his wife threw up her left hand just before the gun fired. He testified that he called the police to get the rescue squad and an ambulance. He said he had not been drinking before he got home but that he drank an 8-ounce glass of whiskey while waiting for the police.

It is the contention of defendant that the evidence is insufficient to sustain a finding that the killing was

malicious and purposeful as required by section 28-402, R. R. S. 1943. This constitutes the only real issue in the case.

The defendant argues that the evidence shows that the death of Martha Ann Marion was an accident and that there is nothing on which a jury could find that it was malicious and purposeful. We think the evidence is sufficient to sustain the verdict of the jury. We shall briefly review the evidence which we think sustains the finding.

The defendant put the gun in his pocket on the night in question to take it home because his employers forbade the keeping of firearms at the liquor store, although he had kept it there for the 3 weeks previous. When he took Opal Lee and his little daughter home at about 10:30 he looked for his wife but she was not there. When he left the liquor store he dropped the gun in his pocket without looking to see if it was on "safety." On arriving home he went directly to the bedroom and questioned his wife as to where she had been. Opal Lee testified that she was awakened by a loud argument between defendant and his wife. She went to their bedroom to quiet them down and saw the defendant brandishing the gun. She heard defendant threaten to beat up the deceased. She returned to her bedroom and went back to sleep. She was awakened later by a pistol shot. The defendant said that it fired once and that he did not pull the trigger. It is conclusively established that the gun was fired at least twice; first, by the bullet holes in the body and, second, by the two spent shells and the two slugs found at the scene of the shooting incident. While it is true that guns are sometimes accidentally discharged, it is most unusual, to say the least, that a gun would accidentally discharge twice into the same human body in so short a space of time. Defendant admits that the deceased threw up her left hand as he drew the gun from his pocket. She was shot through the hand when it was raised evidently

to ward off an impending danger. While there was some conflict in the evidence, particularly between that of defendant and Opal Lee, the determination of such conflicts was for the jury. The jury could find from the foregoing evidence, and all the circumstances testified to, that defendant killed the deceased maliciously and purposely.

In Clown Horse v. State, 170 Neb. 336, 102 N. W. 2d 625, the court cited many authorities supporting the following rule in this state: "In a prosecution for murder in the second degree, when the fact of unlawful killing is proved and no evidence tends to show express malice on the one hand or any justification on the other, the law presumes malice. There is an inference that the killing was intentionally done. The crime of murder in the second degree is established, and the evidence requires the submission of the case to the jury." See, also, Chadek v. State, 138 Neb. 626, 294 N. W. 384.

In Woodard v. State, 159 Neb. 603, 68 N. W. 2d 166, this court said: "Where the evidence and circumstances of the crime are such that different conclusions may properly be drawn therefrom as to the degree, the trial court is without error in submitting the different degrees to the jury for its determination."

The defendant relies primarily on the case of Childs v. State, 120 Neb. 310, 232 N. W. 575, to secure a reversal. In that case the deceased before his death gave a statement that he and the defendant had never quarreled and that they were like brothers. The evidence did not establish that more than one shot struck the deceased and that was in the left hip and right leg. The deceased died about 2 weeks after he was shot of traumatic pneumonia. In the case before us the shooting was preceded for a period of time by loud arguments, fighting, a threat to injure, and a brandishing of the gun. The claim of an accidental firing of the gun is dissipated by the physical facts conclusively establishing that at least two shots were fired. While it

is true, as in the Childs case, that defendant showed some remorse for his act immediately following the shooting, it is not entitled to the weight given it in the Childs case under the circumstances shown in the instant case. In the case before us there is evidence that defendant said he would beat his wife up if she didn't stop doing what she was doing. There was no evidence of such threats in the Childs case. Because of these differences in the evidence we think the Childs case is distinguishable from the case at bar.

It is not the province of this court to resolve conflicts in the evidence in criminal actions, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. Vanderheiden v. State, 156 Neb. 735, 57 N. W. 2d 761.

The trial court properly overruled the motions of defendant for a directed verdict. The verdict of the jury is sustained by the evidence and the judgment is affirmed.

AFFIRMED.