**Carl HERRIN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 941.**

Supreme Court of Alaska.

Jan. 20, 1969.

William B. Emmal, Fairbanks, for appellant.

Robert H. Wagstaff, Asst. Dist. Atty., Fairbanks, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

Appellant appeals from his convictions of the crimes of assault with a dangerous weapon and assault and battery.[1] We affirm the judgment and commitment which was entered by the superior court.

In his first specification of error, appellant asserts that the trial court erred in not granting his motions for judgment of acquittal.

■ It is well established that:

When presented with a specification of error of this nature, this court will consider 'only those facts in the record most favorable to the state and such reasonable inferences as the jury may have drawn from them * * *.' The record is reviewed in this light in order to ascertain whether 'fair minded men in the exercise of reasonable judgment could have differed on the question of whether [appellant's intent to steal] had been established beyond a reasonable doubt.'[2]

The prosecution's evidence, when tested against these criteria, was sufficient to establish appellant's guilt of each offense beyond a reasonable doubt. Review of the pertinent portions of the record concerning the assault and battery which was allegedly committed upon Craig L. Resser shows the following:

On February 28, 1967, between 10 p. m. and 10:30 p. m., Craig Resser, a city of Fairbanks policeman while on motor patrol, was dispatched to meet a Mrs. Mabel Woods at 2d and Lacey Streets in Fairbanks. As a result of conversing with Mrs. Woods, the officer and Mrs. Woods entered an establishment called Ruth's Cafe where Mrs. Wood was then employed. From the record it is apparent that there had been a dispute between Mrs. Woods and appellant, who at the time was also an employee of Ruth's Cafe, as to who was to lock up the restaurant for the evening. In an effort to settle the dispute Officer Resser suggested telephoning the owner. Upon talking to the owner, it was ascertained that Mrs. Woods was authorized to close the premises. Prior to and during this first telephone call, appellant "was very loud, and [made] many vulgar statements at both [Officer Resser] and Mrs. Woods." At one point when the officer was conversing with the owner over the telephone, appellant yanked the telephone out of the officer's hands and proceeded to tear the telephone from its wall connection.[3]

Within minutes another telephone rang in the back of the establishment. Both Officer Resser and appellant again spoke with the owner of the restaurant. According to the officer's uncontradicted testimony, the following events then occurred:

After he had put the phone down, he told me to get out of the establishment and he grabbed me by the lapel of my jacket and pushed me back.

1. In the superior court a two-count indictment was returned. In Count I, appellant was charged with the crime of assault with a dangerous weapon which was allegedly committed on February 28, 1967, upon Virgil W. McConnell. Count II of the indictment charged appellant with the crime of assault and battery allegedly perpetrated upon Craig L. Resser on February 28, 1967. After trial by jury, guilty verdicts were returned on both counts. Appellant was thereafter sentenced to two years on the assault with a dangerous weapon conviction and also received a concurrent 30-day sentence on the simple assault and battery count.

2. Gargan v. State, 436 P.2d 968, 969 (Alaska 1968) (footnotes omitted); Lanier v. State, Opinion No. 932, 448 P.2d 587 (Alaska, December 16, 1968); Stevens v. State, 443 P.2d 600, 604 (Alaska 1968); Maze v. State, 425 P.2d 235, 239 (Alaska 1967); Battese v. State, 425 P.2d 606, 610 (Alaska 1967); Bush v. State, 397 P.2d 616, 618 (Alaska 1964); Goss v. State, 369 P.2d 884, 884–85 (Alaska 1962); Davis v. State, 369 P.2d 879, 881 (Alaska 1962); Hobbs v. State, 363 P.2d 357, 358 (Alaska 1961).

3. At this point Officer Resser told appellant "he was becoming disorderly and * * * to calm down—we'd try to get this situation cleared up."

\* \* \* \* \* \*

\* \* \* shoved me back.

\* \* \* \* \* \*

\* \* \* he started to shake me and then he threw me back.[4]

Officer Resser testified that at this point in time he became concerned about Mrs. Woods and he told her to go out to his patrol car. Officer Resser followed Mrs. Woods out and then radioed for assistance. Sergeant Virgil McConnell arrived within approximately two and one-half minutes of Officer Resser's call.

Concerning the assault with a dangerous weapon charge, the record reveals that when Sergeant McConnell entered Ruth's Cafe he observed appellant had two butcher knives in his hands.[5] Sergeant McConnell then requested appellant to put down the knives. After Sergeant McConnell had come within approximately six feet of appellant, the latter "made a thrust with the butcher knife he was holding in his right hand." Sergeant McConnell then informed appellant he was under arrest for assault with a dangerous weapon. Officer McConnell then drew his revolver. This act was followed by a relatively prolonged confrontation between the two armed protagonists. According to Officer McConnell, appellant, from time to time

would make other thrusts \* \* \* while I was standing much closer to him than I had been the first time. At one

time he placed a knife against my jacket, the knife which he was holding in his right hand. This \* \* \* knife was not thrust, he simply held the knife out. The point \* \* \* was *touching about* my midsection slightly to the right of center, at that time. The point of it was resting against my jacket, but nothing further than that.[6]

Several times throughout the duration of this confrontation appellant screamed, "You're going to have to kill me, I'm not going to jail."[7]

On the basis of this evidence we hold the prosecution produced sufficient evidence of appellant's guilt as to both charges, and that the trial court ruled correctly in denying appellant's motions for judgment of acquittal. Our recent opinion in Thompson v. State[8] is dispositive of appellant's arguments concerning the intent necessary to establish the crime of an assault with a dangerous weapon. In the *Thompson* case, we said:

Appellant contends that a specific intent to inflict injury on the particular victim is required before the jury would be warranted in returning a verdict of guilty of assault with a dangerous weapon. Appellant points out that the Alaska statute is silent with respect to the requirement of intent and that therefore the common law requirement of an intention to do harm prevails.[9]

4. At this time the officer warned appellant he was getting disorderly and to keep calm. Appellant replied, "[S]o what if he was getting disorderly, who was going to stop him." Mabel Woods testified that appellant had the officer by the collar and "pushed him against the wall."

5. Officer Resser testified that the knives were from 9 to 14 inches long (including the handle) and were from one inch to two inches in width.

6. According to Officer Resser's testimony, the following also occurred:
   [Appellant] had made several threatening gestures with the knives toward Sgt. McConnell, thrusts out, and uh— had stated not to come any closer. In one of the thrusts, he had thrust it out and hit the gunsight of Sgt. McConnell's service revolver.

Officer Resser estimated appellant was two feet from Sergeant McConnell when this happened.

7. This confrontation was terminated by the arrival of appellant's parents and his mother slapping him in the face.

8. 444 P.2d 171, 173–174 (Alaska 1968) (footnote omitted).

9. AS 11.15.220 states:
   A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by a fine of not more than $1,000 nor less than $100.

We do not agree. In Burke v. United States [10] the 9th Circuit Court of Appeals, relying upon the Oregon case of State v. Godfrey [11] and an earlier 9th Circuit case which construed Alaska law,[12] said:

'We interpret these words of Godfrey to mean that a *general intent* to do a harm is required and is necessarily included within the definition of the term "assault," but not a *specific intent* to do any particular kind or degree of injury to the victim. (Emphasis supplied by 9th CCA)'

We adopt the above interpretation of AS 11.15.220 and hold that no error was committed.

Under the *Thompson* criterion, we hold the jury could have reasonably found that appellant possessed the requisite intent for conviction of the assault with a dangerous weapon charge.[13]

■ Appellant's final specification appears to assert that both convictions should have been set aside by the trial court because appellant was illegally arrested without a warrant. Appellant has advanced two lines of argument in support of this specification of error. First, appellant argues that Officer Resser had no authority to enter the premises of Ruth's Cafe and was therefore a trespasser. We find no merit in this contention. Factually, Officer Resser was, in a response to a call

for assistance, requested to enter the premises by Mrs. Mabel Woods, an employee of Ruth's Cafe who possessed authority over the premises at the time in question.[14] We therefore hold that Officer Resser's initial entry on the premises was lawful. Appellant next contends that after Officer Resser left Ruth's Cafe he was required to obtain a warrant before he could arrest appellant since he failed to arrest appellant at the time the assault was committed in his presence. AS 12.25.030 provides that a private citizen and a police officer may arrest a person without a warrant for "a crime committed or attempted in his presence."

■ We believe it clear that Officer Resser was authorized, by AS 12.25.030, to arrest appellant at the time he was assaulted by appellant. The fact that the officer chose to remove Mrs. Woods from the premises and to obtain assistance did not make his subsequent re-entry with Sergeant McConnell unlawful. The applicable rule of law in this area has been articulated in Jackson v. Superior Court in and for Merced County:[15]

In making an arrest without a warrant for breach of the peace or a misdemeanor, an officer must act promptly at the time of the offense. If he does not act immediately after the offense has been committed, he can thereafter make arrests only by procuring a warrant and

10. 282 F.2d 763, 768, 92 A.L.R.2d 628 (9th Cir. 1960).

11. 17 Or. 300, 20 P. 625 (1889).

12. Jackson v. United States, 102 F. 473 (9th Cir. 1900).

13. As to the simple assault and battery conviction, the sufficiency of the evidence is not seriously challenged by appellant. AS 11.15.230 provides:

A person not armed with a dangerous weapon, who unlawfully assaults or threatens another in a menacing manner, or unlawfully strikes or wounds another, is punishable by a fine of not more than $500, or by imprisonment in a jail for not more than six months, or by both.

14. In Stevens v. State, 443 P.2d 600, 602 (Alaska 1968) (footnote omitted), a case involving search and seizure issues, we recently said:

Appellant concedes that the original entry of Chief Knudson without a warrant was legal. This is the general rule. In United States v. Barone [2 Cir., 330 F.2d 543] the majority rule was well stated as follows:

'The right of the police to enter and investigate in an emergency without the accompanying intent to either search or arrest is inherent in the very nature of their duties as police officers, and derives from the common law.'

15. 98 Cal.App.2d 183, 219 P.2d 879, 882 (1950).

proceeding in accordance with its terms. * * * In order to justify a delay, there should be a continued attempt on the part of the officer or person apprehending the offender to make the arrest; he cannot delay for any purpose which is foreign to the accomplishment of the arrest.[16]

In the case at bar we cannot find that Officer Resser's conduct was unreasonable.

We conclude that Officer Resser did not unduly delay in attempting to arrest appellant without a warrant. Nor can we find that the officer's re-entry was not made within a reasonable time after he had been assaulted by appellant.[17]

The judgment and commitment entered below is affirmed.

16. In Smith v. State, 228 Miss. 476, 87 So.2d 917, 919, 58 A.L.R.2d 1052 (1956), the court said:

Under some circumstances, there may be justification for delay, as for instance, when the interval between the commission of the offense and the actual arrest is spent by the officer in pursuing the offender, or in summoning assistance where such may reasonably appear to be necessary. * * *

See also Ogulin v. Jeffries, 121 Cal. App.2d 211, 263 P.2d 75 (1953). The authorities are collected in Annot. 58 A.L.R.2d 1056 (1958), *Peace officer's delay in making arrest without a warrant for misdemeanor or breach of peace.*

17. There is no question that under AS 12.25.030 Sergeant McConnell had authority to arrest appellant for the crime of assault with a dangerous weapon which had been committed in his presence. Since we have held that both Officer Resser's initial entry and his re-entry on the premises of Ruth's Cafe were lawful, it follows that Officer McConnell's entry on to the premises in question was also lawful. Compare AS 12.25.090 which reads in part:

A peace officer making an arrest may orally summon as many persons as he considers necessary to aid him in making the arrest.