Irwin Howard CHRISTIE, Appellant,

v.

STATE of Alaska, Appellee.

No. 2841.

Supreme Court of Alaska.

June 9, 1978.

Edgar Paul Boyko, Robert Schraner, Paul L. Davis, Edgar Paul Boyko & Associates, Anchorage, for appellant.

James V. Gould, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

BOOCHEVER, Chief Justice.

Irwin Christie appeals from a conviction, following jury trial, for shooting with intent to kill or wound, in violation of AS 11.15.150.[1] The incident involved a shootout between Mr. Christie and his former wife, Beverly Hoinoski, at her place of residence. Ms. Hoinoski was wounded in the shoulder.

 This appeal involves the following questions: (1) whether a defendant, who had not given notification of an insanity defense, is entitled to an instruction on insanity whenever any evidence pertaining to that issue is elicited during trial; (2) whether a requested instruction on careless use of firearms should have been given as a lesser-included offense; (3) whether a fatal variance existed between the indictment (which charged shooting with intent to kill *and* wound) and the instruction to the jury (which used kill *or* wound) and (4) whether his sentence of ten years imprisonment with three years suspended was excessive.[2] We conclude that insufficient evidence was presented at trial to establish a jury question on insanity; that a lesser-included offense instruction should have been given but that failure to do so was harmless error in the context of this case; that the variance between the indictment and instructions with respect to the shooting-with-intent charge did not constitute error under the circumstances and that the trial judge was not clearly mistaken in imposing the sentence.

## I. STATEMENT OF FACTS

This case involves a post-marital dispute of Mr. Christie and Ms. Hoinoski. They were married in January of 1974. Following several periods of separation, a complaint for divorce was filed by Ms. Hoinoski and a decree was entered in Alaska Superior Court in January 1975. Although the nature of their relationship following the divorce is contested, it does appear that there were periods of affection followed by stormy incidents.

The facts resulting in the conviction presented on appeal occurred on July 6, 1975. In the early morning hours, Christie

---

1. AS 11.15.150 states:

   *Shooting, stabbing or cutting with intent to kill, wound or maim.* A person who maliciously shoots, stabs, cuts, or shoots at another person with intent to kill, wound, or maim him is punishable by imprisonment in the penitentiary for not more than 20 years nor less than one year.

2. Christie also raises an additional issue: that the trial court erred in not dismissing the charge when the state failed to provide immediate discovery.

   Assuming, *arguendo*, that the state was dilatory in producing requested materials, we do not believe that dismissal was warranted. We have stated that dismissal is rarely an appropriate remedy for untimely compliance with discovery. *Scharver v. State,* 561 P.2d 300, 301–02 (Alaska 1977). Rather, a continuance should be granted. *Des Jardins v. State,* 551 P.2d 181, 187 (Alaska 1976). If a violation of Criminal Rule 16 is "willful," sanctions may be imposed. We recognize that in certain circumstances, proceeding with the trial may impinge upon substantial rights of the defendant or deny a fair trial; in such cases, dismissal may be the remedy consistent with due process. Here, however, Christie has not shown sufficient prejudice to warrant such a ruling.

went over to Ms. Hoinoski's residence. He claims he was invited over earlier. Mr. Christie carried his rifle. According to his testimony, he had been told that:

> . . . she bought a gun or she's got a gun and she's got some guy teaching her—taught her how to use it . . . and she's fixing to kill you.

. . . . .

Christie claimed he knocked on the door but got no response. He, therefore, climbed up onto the carport to knock on the window of the kitchen. Ms. Hoinoski came into the kitchen, saw him and returned with a handgun.

A brief exchange followed in which Ms. Hoinoski emptied six shots from her .357 revolver, apparently missing all six times. Mr. Christie fired three shots from his rifle. One shot struck Ms. Hoinoski in the shoulder. The testimony indicates that Mr. Christie then crawled through the window and rendered assistance to her.

According to Mr. Christie, Ms. Hoinoski initiated the shooting, and he never aimed at her. Mr. Christie claimed that he shot as a reflex or to warn Ms. Hoinoski and others that he was armed. According to Mr. Christie, he could not see the victim when he shot. Ms. Hoinoski told the police that Mr. Christie initiated the gunfire which she returned.

Mr. Christie was indicted for attempted murder and shooting with intent to "kill *and* wound." [3] The attempted murder indictment was dismissed.

## II. INSANITY INSTRUCTION

Counsel for Christie submitted proposed instructions and form of verdict on the is-

sue of insanity. Christie contends that it was error for the trial court to refuse to instruct the jury on that issue.

In 1972, the Alaska legislature enacted an insanity law based on the provisions of the Model Penal Code of the American Law Institute. AS 12.45.083 states in part:

> (a) A person is not responsible for criminal conduct if at the time of the conduct, as a result of mental disease or defect, he lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

Evidence of mental disease or defect excluding responsibility is not admissible, however:

> unless the defendant, at the time of entering his plea of not guilty or within 10 days thereafter or at such later time as the court may for good cause permit, files a written notice of his intent to rely on that defense. [4]

No such notice was filed by Christie, and he did not endeavor to introduce such evidence.

During trial, Christie did raise the defense of diminished capacity, contending that he lacked the specific intent to kill or wound. [5] He introduced the testimony of Dr. McManmon who indicated that Christie suffered from alcoholism, which the doctor labeled as a mental disease.

By a paradox, the prosecution brought out the additional evidence at issue in the cross-examination of Dr. McManmon. The state elicited testimony from the doctor

---

**3.** The indictment is titled "Shooting with Intent to Kill and Wound . . . " and reads:

That on or about the 6th day of July, 1975, at or near Anchorage, in the Third Judicial District, State of Alaska, Irwin Howard Christie did unlawfully, feloniously and maliciously shoot Beverly Hazel Hoinoski with the intent to kill and wound her.

All of which is contrary to and in violation of AS 11.15.150 and against the peace and dignity of the State of Alaska.

**4.** AS 12.45.085.

**5.** In *Johnson v. State,* 511 P.2d 118, 124 (Alaska 1973), we stated:

The diminished capacity doctrine is based on the theory that while an accused may not have been suffering from a mental disease or defect at the time of his offense, sufficient to absolve him totally of criminal responsibility, the accused's mental capacity may have been diminished by intoxication, trauma, or mental disease to such an extent that he did not possess a specific mental state or intent essential to the particular offense. (footnote omitted)

which indicated that, due to a combination of alcoholism and his relationship with Ms. Hoinoski, Christie would be "substantially impaired" in his abilities to conform his conduct to what he knew would be right or wrong. The exchange went:

> Q  Are you saying now that your opinion would be that he did lack such capacity?
>
> A  I would say that my opinion is his mental illness, in conjunction with the nature of the relationship he had to his wife was such that this would lead to an impairment of his ability to conform his actions to what he would know would be right or wrong.
>
> Q  To what degree? Substantially impaired? Just a little bit?
>
> A  I would say, yes, substantially.
>
> Q  This mental disease now is the alcoholism, right?
>
> A  That's correct.

The court rejected the requested instruction on the basis that there was insufficient evidence to submit an insanity instruction to the jury.[6]

AS 12.45.083(b) provides:

> Reliance on mental disease or defect as excluding responsibility is an affirmative defense. The burden of proof beyond a reasonable doubt does not require the prosecution to disprove an affirmative defense unless and until there is evidence supporting the defense. The requirement

of evidence supporting the affirmative defense is not satisfied solely by evidence of an abnormality which is manifested only by repeated criminal or otherwise antisocial conduct.

In *Alto v. State,* 565 P.2d 492, 497 (Alaska 1977), we addressed the quantum of evidence necessary to raise an insanity issue:

> Although we have never before articulated a definite legal standard regarding the quantum of evidence which must be adduced to trigger the state's burden to prove sanity, in the federal system, as well as in about one-half of the states, the rule of law seems to be that "some" evidence of the defendant's insanity is sufficient. This rule accords with the thinking of Wigmore, Wiehofen, and Wright, and we hereby adopt it. (footnotes omitted)[7]

In *Alto,* two experts testified regarding the defendant's mental state. *Id.* at 494. Here, the testimony of one expert was presented. The determination of whether sanity is at issue, however, concerns not the quantity of witnesses but the nature of the evidence.[8]

In *McDonald v. United States,* the United States Court of Appeals for the District of Columbia Circuit elaborated on the "some evidence" requirement as follows:

> The subject matter being what it is, there can be no sharp quantitative or qualitative definition of "some evidence." Certainly it means more than a scintilla, yet,

---

6. The exact exchange read:

   THE COURT: Well, I'm not going to rule on the lateness of . . . the instructions. I'm not buying the fact that—and if there was in my opinion testimony that the defendant was sufficient to meet the standards of the statute, I would not let the lateness in the matter—you know, to me, I prefer to give a fair trial irrespective of the rules.
   MR. BOYKO: Well, the lateness, of course, was caused by the fact that this defense just arose due to Mr. Merriner's inquiry.
   THE COURT: Mr. Boyko, even if it came in advertently in your defense case . . .
   MR. BOYKO: I understand.
   THE COURT: . . . I would allow it. To me, I think the fairness of the trial is much more important than rules.
   MR. BOYKO: I appreciate that.

7. *See also, Tatum v. United States,* 88 U.S.App. D.C. 386, 389, 190 F.2d 612, 615, 616 (1951):

   [I]t seems clear to us that sanity is an "essential" issue which, if actually litigated—that is, if "some proof is adduced" tending to support the defense—must be submitted to the jury under the guidance of instructions.

   .   .   .   .

   In sum, the function of the trial court in regard to the issue of sanity is to determine whether that issue is brought into the case by evidence. If it is, then it should be submitted to the jury with instructions . . ..

8. *See United States v. Alvarez,* 458 F.2d 1343, 1344 (5th Cir. 1972); *cf., Kane v. United States,* 399 F.2d 730, 734–35 (9th Cir. 1968), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698, 21 L.Ed.2d 699 (1969) (where substantial evidence necessary to raise issue).

of course, the amount need not be so substantial as to require, if uncontroverted, a directed verdict of acquittal. The judgment of the trial judge as to the sufficiency of the evidence is entitled to great weight on appeal, but, since the defendant's burden is merely to raise the issue, any real doubt should be resolved in his favor.

. . . . .

It does not follow, however, that whenever there is any testimony which may be said to constitute, "some evidence" of mental disorder, the Government must present affirmative rebuttal evidence or suffer a directed verdict. A directed verdict requires not merely "some evidence," but proof sufficient to compel a reasonable juror to entertain a reasonable doubt concerning the accused's responsibility.[9]

In *Alto,* 565 P.2d at 498, we held that the state could rely on its cross-examination to sustain its burden of proving sanity once the issue had been raised by sufficient evidence. AS 12.45.083(b) requires that, initially, there must be evidence supporting a defense of insanity before the burden is placed on the state to prove sanity beyond a reasonable doubt. The trial judge must determine initially whether sufficient evidence is introduced to raise the issue of insanity. We agree with the *McDonald* court that more than a scintilla, yet less than that needed for the entry of a judgment of acquittal, is required. There may well be cases arising when the evidence is sufficient to place the burden on the state of proving sanity, yet that burden is met by cross-examination or other evidence presented by either party.

■■■ We hold that there is "some evidence" of insanity, sufficient to raise the issue, when the evidence presented is more than a scintilla but less than that which would compel a reasonable doubt as a matter of law. In deciding whether there is "some evidence" of insanity, the trial judge is not to impinge upon the jury's responsibility to determine credibility of witnesses.

*Alto v. State,* 565 P.2d at 497. Rather, the judge must determine whether a reasonable juror *could* entertain a reasonable doubt with respect to the accused's sanity.

■■ When the "some evidence" test, as we have defined it, has been met, a defendant is entitled to an insanity instruction, setting forth the state's duty to prove beyond a reasonable doubt that the defendant at the time of the offense had substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. Thus, the ultimate determination of the defendant's criminal responsibility remains with the trier of fact.

■■■ Applying the "some evidence" test to the present case, we conclude that there was insufficient evidence presented to justify reversing the trial court's determination that no jury issue was presented. We do not base our decision on the timeliness of the defendant's assertion of the defense, since we agree with the trial court that the defense should have been submitted to the jury, despite the provisions of AS 12.45.085, had sufficient evidence been presented. AS 12.45.085 merely makes evidence of mental illness excluding responsibility inadmissible in evidence in the absence of written notice of intent to rely on that defense. Thus, if Christie had attempted to introduce such evidence, the state could have objected to its admission. We fail to see, however, how this situation differs from any other in which evidence to which one side might otherwise object is introduced into evidence. Once admitted into evidence, it may be considered by the trier of fact.

As summarized by Professor McCormick:

[A] failure to make a sufficient objection to evidence which is incompetent waives any ground of complaint of the admission of the evidence. But it has another effect, equally important. If the evidence is received *without objection,* it becomes part of the evidence in the case, and is usable as proof to the extent of the rational persuasive power it may have. The fact that it was inadmissible does not

---

**9.** 114 U.S.App.D.C. 120, 312 F.2d 847, 849, 850 (1962) (*en banc*) (footnotes omitted).

prevent its use as proof so far as it has probative value. The incompetent evidence, unobjected to, may be relied on in argument, and alone or in part may support a verdict or finding. This principle is almost universally accepted, and it applies to any ground of incompetency under the exclusionary rules. (footnotes omitted) [10]

The present situation is closely akin to that described by McCormick. The questioned evidence, having been admitted by means of the state's cross-examination of Dr. MacManmon, may be used as proof as far as it has probative value. No provision of AS 12.45.085 requires a different result. [11]

Accordingly, we examine the evidence in question in the context of Dr. MacManmon's entire testimony. We conclude that it cannot fairly be characterized as other

than a scintilla. We held that the trial court did not err in determining that one brief reference to the key words of AS 12.45.083(a) in testimony directed to the issue of diminished capacity, rather than insanity, [12] was insufficient to present a jury question of insanity under the "some evidence" test. [13]

### III. LESSER–INCLUDED OFFENSE

The trial court instructed the jury on the offenses of shooting with intent to kill, wound or maim (AS 11.15.150) [14] and assault with a dangerous weapon (AS 11.15.-220). [15] The court, however, refused to instruct on the offense of careless use of firearms (AS 11.15.200), [16] although requested to do so by Christie. He contends that "careless use" is a lesser-included offense and that it was error not to afford that option to the jury.

---

**10.** McCormick on Evidence, § 54 at 123–24 (2d ed. 1972).

**11.** *See* Note 6, *supra. See also,* Criminal Rule 12(e):

(e) *Effect of Failure to Raise Defenses or Objections.* Failure by the defendant to raise defenses or objections or to make requests which must be made prior to trial, at the time set by the court pursuant to section (c), or prior to any extension thereof made by the court, shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.

In considering whether the trial court would have abused its discretion in permitting the instruction, despite its untimely presentation, had the evidence been sufficient, we note that it could be argued that the defendant should have at least indicated his intent to rely on the defense immediately after the state brought out the evidence on cross-examination, instead of waiting until the end of the case. This would have at least given the state time to rebut the testimony by another psychiatrist. This would probably have required a continuance.

On the other hand, had the trial court decided to give the instruction (after the state's evidence) the state at that time could have moved to reopen its case and put on evidence.

**12.** We note that Dr. MacManmon's examination of Christie was not for the purpose of ascertaining insanity but was directed towards the issue of diminished capacity. The doctor indicated that he had not considered the question pertaining to Christie's ability to conform his conduct to the requirements of law until he was questioned during cross-examination.

**13.** It is thus unnecessary for us to determine whether alcoholism can constitute a mental disease or defect under AS 12.45.083(a).

**14.** AS 11.15.150 provides:

*Shooting, stabbing or cutting with intent to kill, wound or main.* A person who maliciously shoots, stabs, cuts, or shoots at another person with intent to kill, wound, or maim him is punishable by imprisonment in the penitentiary for not more than 20 years nor less than one year.

**15.** At the time of the offense, AS 11.15.220 provided:

*Assault with dangerous weapon.* A person armed with a dangerous weapon, who assaults another with the weapon, is punishable by imprisonment in the penitentiary for not more than 10 years nor less than six months, or by imprisonment in jail for not more than one year nor less than one month, or by fine of not more than $1,000 nor less than $100.

**16.** AS 11.15.200 provides, in part:

*Careless use of firearms.* (a) A person who intentionally, and without malice, points or aims a firearm at or toward a person, or discharges a firearm so pointed or aimed at a person, or points and discharges a firearm at or toward a person or object without knowing the identity of the object and maims or injures a human being, is guilty of the careless use of firearms, and upon conviction is punishable by a fine of not more than $1,000, or imprisonment for not more than one year, or by both.  .  .  .  .

Lesser-included offense problems arise in two contrasting settings. A defendant will sometimes object to a lesser-included offense, contending that the indictment furnishes notification only of the greater offense. The second problem occurs when a defendant claims that he is denied the right to a lesser-included offense instruction. We are concerned here only with this latter aspect of the lesser-included offense doctrine.

Criminal Rule 31(c) provides:

*Conviction of Lesser Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or the offense necessarily included therein if the attempt is an offense. When it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he can be convicted of the lowest of those degrees only.

Thus, if "careless use" were "necessarily included" in the offense charged, Christie was entitled to an instruction thereon.

▇▇▇▇ In *Jennings v. State,* 404 P.2d 652, 655 (Alaska 1965), we stated:

An offense is necessarily included in the offense charged . . . where one could not have committed the offense charged without also having committed the offense of lesser magnitude.[17]

Similarly, in *Giles v. United States,* 144 F.2d 860, 861 (9th Cir. 1944), the United States Court of Appeals for the Ninth Circuit had the opportunity in a case arising in the Territory of Alaska to enunciate the following rule:

[T]o be necessarily included in the greater offense, the lesser must be such that it is impossible to commit the greater without first having committed the lesser.[18]

We reaffirm these statements of the rule which appear in accord with those cases decided under the analogous federal rules [19] and with other state decisions.[20]

Generally, it is held that the elements of the included offense must be fewer in number than the elements of the greater offense or, stated differently, that the included offense must be less than the charged offense in terms of its constituent elements.[21] Most courts require that there be some evidence to support the lesser-included offense,[22] and it is usually required that the punishment be less severe for the lesser-included offense.[23]

**17.** We held that the trial court properly instructed the jury that involuntary manslaughter was a lesser-included offense of second-degree murder. We noted that the former offense was of "less magnitude" than the latter but that the "gravamen" of the two offenses (an unlawful killing) was the same. *Id.* at 655.

**18.** Quoting, *House v. State,* 186 Ind. 593, 117 N.E. 647 (1917).

**19.** *See Sansonne v. United States,* 380 U.S. 343, 349–50, 85 S.Ct. 1004, 13 L.Ed.2d 882, 887–88 (1965); *Berra v. United States,* 351 U.S. 131, 134, 76 S.Ct. 685, 100 L.Ed. 1013, 1017 (1956); *Waker v. United States,* 344 F.2d 795, 797 (1st Cir. 1965). Rule 31(c) of the Federal Rules of Criminal Procedure provides:
    *Conviction of Lesser Offense.* The defendant may be found guilty of an offense necessarily included in the offense charged, or of an attempt to commit either the offense charged or the offense necessarily included therein if the attempt is an offense.

**20.** *See State v. Gonzales,* 24 Ariz.App. 308, 554 P.2d 904, 905 (1976); *People v. Anderson,* 15

Cal.3d 806, 126 Cal.Rptr. 235, 543 P.2d 603, 606 (1975).

**21.** *See* 11 A.L.R. Fed. 173, *et seq.,* and cases cited therein.

**22.** *See State v. Schoeder,* 95 Ariz. 255, 389 P.2d 255, 257, *cert. denied,* 379 U.S. 939, 85 S.Ct. 347, 13 L.Ed.2d 350 (1964), in which the Supreme Court of Arizona stated:
    Under our holdings, instructions on lesser offenses are justified only where there is evidence upon which the jury could convict of a lesser offense . . . .. In other words, the state of the record must not be such that defendant can only be guilty of the crime charged or not guilty at all.
*See also, State v. Gonzales,* 46 Wyo. 52, 23 P.2d 354 (1933). *But see, State v. Barnes,* 182 So.2d 260, 262 (Fla.1966) (evidence of lesser offense not required for instruction where offense divided into degrees).

**23.** *See* 11 A.L.R. Fed. 173, 178.

■ The determination of whether a defendant is guilty of the lesser or greater offense is the province of the jury.[24]

■ A failure of a trial court to give an instruction properly requested by the defendant on a lesser-included offense is error.[25] Courts have held that a refusal to give lesser-included offense instructions invades the defendant's constitutional right to a jury determination of factual matters in a criminal trial.[26]

The rationale behind the rules is stated as follows:

> There are two obvious situations in which the use or non-use of lesser included offense instructions may be unfair to either the defendant or the prosecution. First, when facts are put in evidence which support instructions as to lesser degrees and they are not given, the jury may be faced with the choice either of acquitting a man who is obviously guilty of some wrong or of finding guilty a man who is not guilty of the crime charged. For example, when there is evidence to support second degree murder but only first degree murder is instructed upon, the jury may have to choose between setting free a man whom they believe to be guilty of second degree murder or convicting a man whom they do not believe guilty of first degree murder. Second, when no evidence exists to substant[iate] instructions on lesser degrees but they are given, the jury may compromise its doubt as to a greater degree by convict-

ing of a lesser degree. From the defendant's standpoint, the first seems to be the greater evil in most cases. When there is evidence to substantiate the commission of a lesser offense, the giving of a lesser included offense instruction serves a dual beneficial purpose. It helps to prevent a defendant from being convicted of a greater offense than his guilt warrants and at the same time, enables the prosecution to gain conviction of an offense which corresponds more closely to the actual guilt of a defendant.[27]

With these principles in mind, we shall examine the elements of the three relevant statutes as applied to the facts of this case.

AS 11.15.150 prohibits "maliciously . . . shoot[ing] at another person with intent to kill, wound, or maim him." It thus involves the act of shooting at a person, malice and the specific intent to kill, wound or maim.

AS 11.15.220 prohibits assaults by a person armed with a dangerous weapon. The statute itself is silent as to intent or malice but has been construed as requiring a general intent to do harm.[28]

AS 11.15.200 (careless use of firearms) is a complicated tri-partite statute. For easy reference, we shall quote from it again:

> A person who intentionally, and without malice, points or aims a firearm at or toward a person, or discharges a firearm so pointed or aimed at a person, or points and discharges a firearm at or toward a person or object without knowing the identity of the object and maims or in-

---

24. In *Gallegos v. People,* 136 Colo. 321, 316 P.2d 884, 885 (1957), the court stated:
   The defendant was entitled to have the jury . . . determine, under proper instructions, all questions of fact including the question of the degree of the offense. . . . *State v. Marion,* 174 Neb. 698, 119 N.W.2d 164, 167–68 (1963); *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224, 230 (1962); *People v. Ogg,* 159 Cal.App.2d 38, 323 P.2d 117, 125 (1958).

25. *See People v. Dewberry,* 51 Cal.2d 548, 334 P.2d 852, 858 (1959). *See also,* Wharton's Criminal Law and Procedure, § 2099 at 268 (10th ed. 1957).

26. *See Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224, 230 (1962); *Henwood v. People,* 54 Colo. 188, 129 P. 1010, 1014 (1913).

27. Comment, "The Lesser Included Offense Instruction—Problems with Its Use," 3 Land and Water L.Rev. 587, 590–91 (1968). For another law review treatment of this area, *see* "The Lesser-Included Offense Doctrine in Iowa: The Gordian Knot Untied," 59 Iowa L.Rev. 684 (1972).

28. *Burke v. United States,* 282 F.2d 763, 768 (9th Cir. 1960); *Herrin v. State,* 449 P.2d 674, 676–77 (Alaska 1969); *Thompson v. State,* 444 P.2d 171, 174 (Alaska 1968).

jures a human being, is guilty of the careless use of firearms . . . .

The types of conduct prohibited are:

1. Intentionally, and without malice, pointing or aiming a firearm at or toward a person;

2. Discharging a firearm which is pointed or aimed, intentionally and without malice, at a person.[29]

3. Pointing and discharging, without malice, a firearm at or toward a person or object without knowing the identity of the object and maiming or injuring a human being.

While the first two prescribed acts specify an intentional pointing or aiming, the third type of conduct does not, unless it incorporates the reference to intention contained at the beginning of the section.[30] In *Giles v. United States, supra* 144 F.2d at 861, it was held that the section involved an intentional pointing throughout its provisions. It would seem at least equally logical, however, that one who carelessly discharges a firearm which is unintentionally pointed at another and injures that person would be guilty under the statute. The first portion of the statute specifically describes the intent involved. The second portion adopts that same requirement of intentional pointing by use of the phrase "*so* pointed." The third portion of the statute merely uses the language "point" without reference to the intent by use of the word "so."[31] Moreover, if the third portion were intended to apply only to intentional pointings, it would be partially redundant, since the second portion applies to an intentional pointing or aiming at or toward a person and an unintentional discharging of the firearm. It therefore covers all cases of unintentionally discharging a firearm intentionally pointed, whether or not a person is wounded.[32] The only conceivable reason for including the third portion is to cover an unintentional pointing at or toward a person and a discharge[33] of the firearm resulting in injury to a person. We

---

[29] On its face, the statute is silent on whether the discharge must be intentional or unintentional under this clause. We believe the clause applies only to unintentional discharges, since an intentional discharge, accompanied by an intentional pointing would (absent diminished capacity) permit an inference of specific intent to kill, wound or maim; and such a specific intent would constitute malice. Thus, AS 11.15.150 would be violated. Further, even with diminished capacity present, and intentional pointing and an intentional discharge would constitute a general intent to harm under AS 11.15.220. Thus, the clause applies only to unintentional discharges. To hold otherwise would be to permit the same conduct to be charged under AS 11.15.200 and either AS 11.15.220 or AS 11.15.150 (if specific intent is inferable). This would raise serious questions of prosecutorial discretion and equal protection. *See State v. Erickson,* 574 P.2d 1 (Alaska 1978); *People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316, 318 (1975). Our construction is thus consistent with our duty to avoid dangers of unconstitutionality. *Larson v. State,* 564 P.2d 365, 371–72 (Alaska 1977); *State v. Martin,* 532 P.2d 316, 321 (Alaska 1975); *Hoffman v. State,* 404 P.2d 644, 646 (Alaska 1965). Further, application of this clause to intentional discharges would render it redundant when compared with AS 11.15.150 and AS 11.15.220. Where possible, construction should avoid redundancy. "The presumption is that the lawmaker has a definite purpose in every enactment." Sands, Sutherland Statutory Construction, § 46.05 at 57 (4th ed. 1973).

[30] We believe the phrase "without malice" applies to all three clauses. To hold otherwise would allow a defendant who acted with the general intent to harm required by AS 11.15.220 to avail himself of AS 11.15.200 as a lesser-included offense. Malice, although not technically an "element" of assault with a dangerous weapon, is necessarily involved since it is subsumed within a general intent to harm. *Burke v. United States,* 282 F.2d 763, 768 (9th Cir. 1960). Thus, absent excuse, justification or factors of mitigation, a general intent to harm forecloses applicability of AS 11.15.200.

[31] The statute, as it appeared in Carter's Ann. Alaska Code, Part I, § 22 (1907), contained the phrase "so pointed" in all three clauses. When the statute was amended in 1935 to essentially its present form, the phrase was deleted from the third portion. SLA 1935, Ch. 39.

[32] "A statute should be construed so that . . . no part will be . . . superfluous. . . ." Sands, Sutherland Statutory Construction, § 46.06 at 63 (4th ed. 1973). Further, "each section of a statute is presumed to serve some useful purpose." *Isakson v. Rickey,* 550 P.2d 359, 364 (Alaska 1976).

[33] The statute is silent as to whether the discharge must be intentional. By its terms, it

thus respectfully disagree with the *Giles* court and hold that the third portion of the statute applies to an unintentional pointing only.[34]

Christie contended that he discharged his weapon without intentionally pointing or aiming at Ms. Hoinoski, as a reflex or for the purpose of warning her and others that he was armed. Since injury resulted, the third portion of the careless use of firearms statute would apply if the jury were to believe his version of the incident.

Under the circumstances of this case where Ms. Hoinoski was wounded, it was impossible to commit the greater offenses of assault with a dangerous weapon or shooting with intent to kill, wound or maim without pointing and discharging a firearm so as to wound another. The elements of the careless use of offense are fewer than the greater offenses, since assault with a dangerous weapon requires a general intent to harm and shooting with intent requires malice and the specific intent to kill, wound or maim.

▮▮▮▮ We find that all of the requirements for including an instruction as to the lesser-included offense were present, and we hold that it was error not give an instruction as to the appropriate portion of AS 11.15.200.[35]

▮▮▮▮ We believe, however, that the failure to give an instruction on careless use of firearms was harmless error in light of the jury's verdict.[36] A guilty verdict on a charge of shooting with intent to kill when the jury was given the choice of the lesser-included offense of assault with a dangerous weapon, is necessarily a rejection of Christie's contention that he discharged his weapon without intentionally pointing or aiming at Ms. Hoinoski.[37] Thus, we do not ascertain any prejudice to Christie as a result of the trial court's failure to instruct on careless use of firearms, since, as we have discussed *supra*, the right to that instruction was predicated upon the possibility of the jury's finding that the pointing or aiming was unintentional.[38]

## IV. VARIANCE BETWEEN THE OFFENSE CHARGED IN THE INDICTMENT AND THE INSTRUCTIONS TO THE JURY

The indictment used the language of shooting with the intent to "kill *and*

*would* include both intentional and unintentional discharges, and we so construe it. As we have explained, *supra* Note 29, an intentional pointing and an intentional discharge would violate either AS 11.15.150 or AS 11.15.220.

34. We urge the legislature to clarify this ancient statute.

35. The state contends that the shooting with intent statute, AS 11.15.150, also includes "cutting and stabbing and that one can therefore commit the greater offense by cutting and stabbing" without committing the lesser offense of careless use of a firearm. The state's position is erroneous. The fact that there may be alternate means of meeting the requirements of the greater statute is irrelevant to the determination that, by the facts charged in the indictment, the lesser crime is necessarily included in the greater.

36. Criminal Rule 47(a) specifies:
*Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

37. *See People v. Sedeno*, 10 Cal.3d 703, 112 Cal.Rptr. 1, 518 P.2d 913, 925 (1974) (guilty verdict on first degree murder charge removed prejudice from failure to instruct on involuntary manslaughter, since jury necessarily found intent to kill when it refused to find the defendant guilty of only second degree murder). Thus, a defendant's constitutional right to have a jury determine every material issue presented by the evidence is not violated by failure to instruct on a lesser-included offense where it is clear that by deciding against the accused on another lesser-included offense, the jury necessarily resolved against the accused the issue presented by the missing instruction. *Id.* at 924.

38. We respectfully decline to follow the reasoning of the United States Court of Appeals for the Third Circuit in *United States ex rel. Matthews v. Johnson*, 503 F.2d 339, 346 (3d Cir. 1974) (*en banc*), *cert. denied*, 420 U.S. 952, 95 S.Ct. 1336, 43 L.Ed.2d 430 (1975), wherein the court found the error not to be harmless, reasoning that if the jury had three choices instead of two, it might have compromised on the middle ground—in Christie's case, assault with a dangerous weapon. We do not believe that juries should reach verdicts by compromise, and we will not give our approval to such procedures.

wound." Instructions to the jury followed the statutory language of shooting with intent to kill *or* wound.

The defendant maintains that the wording of the indictment sets the state's burden to prove beyond a reasonable doubt both intent to kill and intent to wound. The defendant further contends that he was misled by the indictment and tailored his defense anticipating the prosecution would attempt to prove both the intent to kill and wound Ms. Hoinoski.

This court has addressed both the purposes of indictments and the effects of errors in form. In *Thomas v. State*, 522 P.2d 528, 530 (Alaska 1974), we stated:

> [A]n indictment should be read in the light of common sense and should not be vulnerable to attack for technical defects. The fundamental purposes of the indictment are to furnish the accused with a description of the charge against him to enable him to prepare his defense and to permit him to claim double jeopardy in the future should he again be charged with the same offense. (footnotes omitted)

Criminal Rule 7(c) further provides, in part, that:

> No indictment is insufficient . . . which does not tend to prejudice the substantial rights of the defendant.

The defendant is analytically correct in his assertion that the plain meaning of the indictment, phrased in the conjunctive, on its face, appears to increase the burden of proof required by the language of the disjunctively-worded statute. The indictment's language appears to require that the state prove both an intent to kill and an intent to wound the victim.

Where the indictment is phrased in the conjunctive, courts have, for the most part, treated such phrasing as though it were in the disjunctive, finding proof of any of the specifications sufficient for conviction. The United States Court of Appeals for the District of Columbia Circuit has stated:

> The allegation of . . . acts in the conjunctive is the proper way to allege several acts constituting a single offense committed in violation of a single statute. To charge the offense in the disjunctive (as it appears in the strict language of the statute), that the accused did one thing "or" the other, would make the indictment bad for uncertainty, so it is necessary to connect them with the conjunctive "and" before evidence can be admitted as to more than one act. Then a conviction follows if the testimony shows the accused to be guilty of any one of the acts charged.[39]

This rationale is of questionable merit.

If to charge in the disjunctive renders the indictment of the grand jury bad for uncertainty, the same problem would be presented by the verdict rendered by the petit jury. We do not believe that the issue may be resolved by such a generalization. There are instances when such a variance would be fatal; and others, when it would not affect any substantial rights of an accused.

■ We must look first to the purpose of the indictment. As stated in *Thomas v. State, supra,* the purpose is to give the defendant notice of the charge against him so as to enable him to prepare his defense and to permit him to claim double jeopardy in the future should he again be charged with the same offense. Secondly, we must be assured that the conviction conforms to due process and that all twelve jurors actually agreed on facts justifying the conviction.

■ There can be no question that Christie received adequate notice of the charge against him. There is no ambiguity as to the incident involved, and he is in a position to claim double jeopardy if again charged with the offense of shooting with intent to kill or wound arising out of this incident.

Further, we find no violation of due process here. Assuming for the moment that

**39.** *Joyce v. United States,* 147 U.S.App.D.C. 128, 133, 454 F.2d 971, 976 (1971), *cert. denied,* 405 U.S. 969, 92 S.Ct. 1188, 13 L.Ed.2d 242 (1972). *See also, Turner v. United States,* 396 U.S. 398, 420–21, 90 S.Ct. 642, 24 L.Ed.2d 610, 625–26 (1970); *Crain v. United States,* 162 U.S. 625, 636, 16 S.Ct. 952, 40 L.Ed. 1097, 1100 (1896).

six jurors believed him to have the intent of wounding Ms. Hoinoski; and six, the intent of killing. In either event, he would be guilty of the charge, and those finding the intent to kill would have necessarily found an intent to wound. One cannot kill by shooting without wounding. There is no reasonable possibility of a less than unanimous verdict as to the salient facts required for a finding of guilt.

A similar situation was presented in *People v. Pierce*, 26 Ill.App.3d 550, 325 N.E.2d 758 (1975), aff'd, 62 Ill.2d 223, 341 N.E.2d 705 (Ill.1976). The defendant's indictment recited that he "lewdly fondled *and* touched" the complainant (emphasis added). The statute, however, used the language "fondling *or* touching" (emphasis added). The court found no error because the words "fondling" and "touching" involved the same criminal act. *Id.* at 766. While there can be touching without fondling, there cannot be fondling without touching. The case is analogous to shooting with intent to kill or wound in that there can be an intent to wound without an intent to kill, but there cannot be an intent to kill by shooting without an intent to wound. In *Pierce,* as here, there was no possibility of a less than unanimous verdict.[40]

■ Under the facts of this case,[41] we find no fatal variance between the indictment and the charge.

## V. THE SENTENCE

■ Christie appeals from a ten-year sentence with three years suspended. The trial court also recommended psychiatric assistance. The maximum for shooting with intent to kill is twenty years.[42]

Looking to the record it can be noted that the trial court indicated he had read the pre-sentence report and psychiatric reports attached to it. The report recommends that probation be denied and that psychiatric counseling be provided. The conviction record in the report indicates defendant's criminal past record involves: 1) drunk (1969, $25 bail forfeiture); 2) driving without owner's consent (1970, $300 fine, $100 suspended); 3) driving while intoxicated (1970, thirty-day suspended license); 4) drunk (1971, $62 bail forfeiture); 5) OMVI (1974, ten-day sentence, suspended; $500 fine); and 6) careless use of firearms (1975, six-month suspended imposition of sentence). Also, nine motor vehicle citations were noted between 1972 and 1974 with fines totalling $733.00.

Defendant's main argument is that the trial court showed a preoccupation with punishment and vengeance and thus ignored the other appropriate considerations enunciated in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970).[43] Defendant does not argue that the trial court failed to consider

---

**40.** Christie cites *State v. Brotzer,* 245 Mo. 499, 150 S.W. 1078 (1912), which involved a charge that the defendant "injured, molested *and* destroyed . . . wires" (emphasis added). The statute, however, specified ". . . injure, molest *or* destroy . . ." (emphasis added). The defendant allegedly tangled telephone wires by twisting one over another. The instructions to the jury paralleled the statute. The court held that the instructions should not have been in the disjunctive but should have required the finding of one particular act constituting the offense. *Id.* at 1082. The case is not on point. A twisting of the wires might constitute "molesting," but it would not necessarily be involved in either "injuring" or "destroying" the wires.

**41.** Generally, where a statute uses disjunctive language, the preferred procedure is to require an election by the state as to the particular element to be proved. *See* Note 40, *supra.*

**42.** *See* Note 1, *supra.*

**43.** We set forth the factors as follows:

[R]ehabilitation of the offender into a non-criminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves. (footnote omitted)

all *Chaney* elements. As to rehabilitation, the court found, "[u]nfortunately, I don't think we've been able to find whatever serum or antibiotic or whatever it is . . to cause rehabilitation." The court noted Christie's suspended imposition of sentence on the prior careless use charge and his decline in recent years due to alcohol.

The defendant is correct that the trial court equated reaffirmation of societal norms with "vengeance" and "punishment" and indicated that people who commit crimes with guns are "going to get burned." This hyperbole, however, was stated within the broader context of mentioning rehabilitation, protection of society and deterrence. The trial court also noted psychiatric evaluations and Christie's good work record.

Looking to other cases of shooting with intent to kill or assault with a dangerous weapon, we find that this sentence is greater than some [44] but more lenient than others.[45]

Considering the serious nature of the offense and the defendant's background, we hold that the trial court was not clearly mistaken [46] in imposing the sentence.

AFFIRMED.

BURKE, Justice, with whom MATTHEWS, Justice, joins, concurring.

I disagree with the majority's interpretation of AS 11.15.200. That section I believe, was properly construed in *Giles v. United States*, 144 F.2d 860, 861 (9th Cir. 1944), to contain the requirement of an intentional pointing throughout its provisions. The third part of the statute, as I read it, applies where one intentionally points and discharges a firearm at a person or other object without knowing the identity of that object, *i. e.*, without knowing whether it is a man, an animal, an automobile, or a baby carriage, and thereby maims or injures a human being. It differs from the second portion of the statute in that the conduct to be avoided is that of intentionally pointing and discharging a firearm at something which has not been identified by the shooter. The danger inherent in such practices is apparent, and it seems to me more likely that that is what the legislature had in mind.

I also disagree with the conclusion stated in note 29 that "the clause applies only to unintentional discharges." My own view is that the statute requires that the discharge be intentional, at least in the sense that the defendant intentionally, rather than accidentally, pulled the trigger, even though he might not have intended to cause the weapon to actually fire. In addition, while an intentional discharge might permit an inference of specific intent to kill or a general intent to inflict harm, the jury could presumably still have a reasonable doubt as to either one of those two elements. Thus, I question whether the construction that is here suggested would raise the "serious questions of prosecutorial discretion and equal protection" feared by the majority.

---

44. *Crow v. State*, 517 P.2d 756 (Alaska 1973) (ADW; five years, two years suspended); *Nielson v. State*, 492 P.2d 122 (Alaska 1971) (ADW; three years); *cf. State v. Armantrout*, 483 P.2d 696, 698 (Alaska 1971) (ADW; three years, suspended; disapproved as too lenient).

45. *Thomas v. State*, 524 P.2d 664, 665 (Alaska 1974) (ADW; ten years); *McCracken v. State*, 521 P.2d 499, 512 n. 59 (Alaska 1974) (two counts of shooting with intent to kill; two consecutive twenty-year sentences); *Stevens v. State*, 514 P.2d 3, 6 (Alaska 1973) (ADW; ten years).

46. *McClain v. State*, 519 P.2d 811, 814 (Alaska 1974).