**Clifford JOHNSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6662.**

Court of Appeals of Alaska.

June 24, 1983.

---

---

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

Anne Carpeneti, Asst. Atty. Gen., Daniel W. Hickey, Chief Prosecutor, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

COATS, Judge.

Following a jury trial, Clifford Johnson was convicted of kidnapping, in violation of AS 11.41.300(a)(1)(C)[1], and sexual assault in the second degree, in violation of AS 11.41.-

1. AS 11.41.300(a)(1)(C) provides:
   *Kidnapping.* (a) A person commits the crime of kidnapping if
   (1) he restrains another person with intent to
   .   .   .   .   .
   (C) inflict physical injury upon him or sexually assault him or place him or a third person in apprehension that any person will be subjected to serious physical injury or sexual assault;

420.[2] The sole issue on appeal is whether the trial court erred in refusing to give a lesser included instruction of attempted sexual assault in the second degree.

On July 30, 1981, M.L.H., age 19, missed her bus to work at a day care center on College Road in Fairbanks. Because she needed to be at work within a half-hour, M.L.H. decided to hitchhike down College Road, a distance of approximately four miles. As she was crossing the parking lot of Gavora Mall, a tan pickup truck approached. The driver asked if she needed a ride. Because of the variation in descriptions of what next occurred, the versions are given separately.

### A. M.L.H.'s Account

According to M.L.H., she asked Johnson if he was going up College Road. He waved for her to get into the truck. Because he was unfamiliar with the area, he said she would have to direct him.

M.L.H. said Johnson turned off of College Road onto Aurora Drive. He explained that he was looking for a friend's house. After the detour, he turned the wrong way on College Road, so he was again returning to Gavora Mall rather than going in the direction of the day care center. She objected. He turned onto a dirt road, off College Road.

When Johnson stopped the truck, M.L.H. said, "Let me out." According to M.L.H.: "He leaned over towards me. He said I don't want to have to hurt you. That's when I was going to open the door so I didn't." She testified that Johnson grabbed her arm, put his other arm around her and locked the door. "[H]e said I just—I just want to kiss you." She had given no indication that she wanted him to kiss her. She pushed him away, with her hands placed on his shoulders and chest.

Johnson grabbed her arms and pushed her down on the seat so her head was near the steering wheel. She screamed and he grabbed her face, put his hand on her mouth and squeezed. M.L.H. scratched him. She then lifted her hand up and honked the horn because she wanted help.

Johnson was laying on top of her and said, "Just a minute, just a minute." He touched her breasts through her clothes at this time. She concluded that he wanted to have intercourse because he was moving his body around on hers, in a manner similar to body movements during intercourse.

Both Johnson and M.L.H. were fully clothed. She believed that he had an erection because she felt it against her leg while he was laying on top of her. After she honked the horn, Johnson attempted to grab her arm and pull it away. That was unsuccessful because her arm was entwined with the steering wheel. He "sat up and said get out of here bitch and open the door."

M.L.H. grabbed her backpack, which had somehow fallen out of the truck, and ran to the back of the truck to get the license number. At the same time, Johnson was backing out of the area quickly. He proceeded to College Road. M.L.H. walked to College Road. She was very upset, crying and calling out for help. She said her arms and face hurt after the assault. She kept saying the license number over and over to herself.

On cross-examination, M.L.H. said that Johnson "touched my chest and said I just want to kiss you." However, she said no kiss took place and no clothing was removed.

---

**2.** AS 11.41.420(a) provides:

*Sexual Assault In The Second Degree.* (a) A person commits the crime of sexual assault in the second degree if he coerces another person to engage in sexual contact by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone or by causing physical injury to any person, regardless of whether the victim resists.

AS 11.81.900(b)(51) provides:

"[S]exual contact" means

(A) the intentional touching, directly or through clothing, by the defendant of the victim's genitals, anus, or female breast; or

(B) the defendant's intentionally causing the victim to touch, directly or through clothing, the defendant's or victim's genitals, anus, or female breast;

### B.  Johnson's Account

Johnson had been out early during the morning of July 30, looking for cardboard boxes in which to store some of his property.  He was at the Gavora Mall parking lot when he saw M.L.H.  She appeared angry.  He reported that she was walking fast and looked distraught.  He approached her in his vehicle and asked her if she needed any help.  She told him she was going to work and that she needed a ride.  He said sure, and waved for her to enter the truck.

She did not hesitate to get into the truck and did not appear frightened, he said.  She told him she worked on College Road.  He said that she would have to show him how to get there.  She directed him to the nearest intersection and told him to turn left.  As they drove down College Road, he inquired how far away the day care center was, because he wanted to return to his home and get ready for work.  "I told her that I couldn't take her, you know, all the way.  I could take her half the way or something.  And then at that time she said there's a dirt road somewhere near here you can let me off there."  He turned left, onto a dirt road.  He denied making any other detour off College Road prior to turning onto the dirt road.  He came to a stop about ten to twenty feet on the dirt road.

[I] just put it in park, you know, and I looked at her and she looked at me and as if to say, you know, I don't know, this—she said she didn't want to—she didn't feel like going to work, you know, in that type of—she was kind of nervous like that.  She says she didn't feel like going to work, so I kind of knew what—you know, I said, well—you know, I kind of made up in my mind I said, she wants something.  So I—I had to use the restroom.  Honestly, I had to use the restroom, so I got out of the car 'cause there was some bushes somewhere near.

While Johnson was relieving himself, M.L.H. honked the horn, he said.  He assumed she did it in a playful manner, to get his attention.  When he returned to the truck, she appeared nervous and "it looked like she was afraid, but she wanted to do something, you know.  I don't know."

Well, after I got back into the truck we looked at each other, you know, we—she was fidgeting and I didn't say nothing.  It was like 30 seconds of silence or something like this.  So I—me being a man I guess I figured that she wanted—you know, wanted me, you know.  Conceited as I am I guess, but that's how I felt.  So I thought she was the shy type, you know, and wanted me to make the first move 'cause she was looking like she was fidgeting and things so I—I kissed her.  I did make the first move.

While they were looking at each other, Johnson moved closer to her.  He put one arm around her, while the other remained on the seat.  M.L.H. did not push him away when he kissed her.  "She didn't act like she wanted it or she didn't act like she didn't want it, you know," he said.  However, after he kissed her she began crying.  "I thought that was natural 'cause you know, she looked that way fidgeting and stuff.  And after she started crying, she was mumbling something about she shouldn't do this, you know."

She asked him to take her to work and he refused to go out of the way.  "And she called me some dirty something.  Well, I—then I—that's when I said well, get out then, bitch.  And I opened the door for her.  And she slammed it and said I'll get you or something of that nature."

He stated that she never attempted to get out of the pickup, prior to the time she actually exited.  On cross-examination, Johnson was asked:

QUESTION: Did you do anything else except kiss her?  Did you get any farther—was there any petting, fondling, any kind of activity like that?

ANSWER: I might have touched the side of her body, but that's—that was it.

He stated that he did not attempt to remove any of her clothing or any of his.  He testified that he never held her arm or put his hand on her face.  Given their difference in size, he felt certain that he was

capable of forcing M.L.H. to have sexual contact.

Johnson's trial attorney requested that the court instruct the jury regarding attempted sexual assault in the second degree, as a lesser included offense for Count III, sexual assault in the second degree. He argued that, under the evidence, the jury might conclude that Johnson intended to have sexual contact with M.L.H., and that in kissing her he made a substantial step, or an attempt, toward completing that crime. Trial Judge James Blair reasoned that if the jury believed Johnson's version of the facts, he should not be guilty of any crime, and rejected the proposed defense instruction. The arguments which counsel made to the jury coupled with the court's instructions made it clear that if the jury believed that Johnson kissed or had other contact with M.L.H., without any intent to coerce her to have sexual contact with him by express or implied threats, then he should be found not guilty.

Johnson was found guilty of kidnapping, an unclassified felony, and sexual assault in the second degree, a class B felony. He was found not guilty of attempted sexual assault in the first degree, a class B felony.

The parties to this appeal agree that attempted sexual contact in the second degree is a lesser included offense of sexual contact in the second degree, given the identity of all elements except the one involving completion of the act. The parties also appear to agree that, in the event there is evidence to support the theory that the defendant committed attempted sexual contact in the second degree, the defendant was entitled to an instruction on that lesser included offense.[3] They also appear to agree that if there was no evidence from which the jury could find that Johnson committed attempted sexual contact in the second degree, Judge Blair was not required to instruct on that offense. *Loesche v. State,* 620 P.2d 646, 652 (Alaska 1980); *Valentine v. State,* 617 P.2d 751, 753–54 (Alaska 1980); *Hartley*

*v. State,* 653 P.2d 1052, 1054 (Alaska App. 1982).

Johnson argues that the jury could have found that he attempted to have sexual contact with M.L.H. but that he never had sexual contact with her. The state argues that there was no evidence that Johnson attempted to have sexual contact with M.L.H. If the jury believed M.L.H., Johnson had forcible sexual contact with her; if the jury believed Johnson, he did not have sexual contact with her.

We conclude that the trial judge did not err in refusing to instruct on the lesser included offense of attempted sexual contact in the second degree. The trial judge is required to give a lesser included offense instruction only in the event that there is a factual dispute as to an element of the greater offense so that the jury could rationally acquit on the greater offense and convict on the lesser offense. *Rice v. State,* 589 P.2d 419, 420 (Alaska 1979). However, the "decision whether there is enough evidence to justify a lesser offense charge rests within the sound discretion of the trial judge." *United States v. Busic,* 592 F.2d 13, 25 (2d Cir.1978). In the instant case, we believe that the trial judge did not abuse his discretion in deciding that there was insufficient evidence to justify the jury in concluding that Johnson attempted to coerce M.L.H. to have sexual contact with him by express or implied threats but that Johnson did not succeed in having sexual contact with M.L.H. That certainly was not Johnson's testimony and he never indicated that he wished to argue that theory to the jury. That theory would, of course, be inconsistent with his defense. We think the trial judge could reasonably conclude that there was insufficient evidence to justify charging the jury on the offense of attempted sexual assault in the second degree and that giving such a charge could confuse the jury about the relevant issues in this case. We find no error. The conviction is AFFIRMED.

---

3.  *Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979); *Christie v. State,* 580 P.2d 310, 318 (Alaska 1978); Alaska R.Crim.P. 31(c).