**Dennis L. BADEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 6832.**

Court of Appeals of Alaska.

Sept. 2, 1983.

---

Mary E. Greene, Asst. Public Defender, Fairbanks, and Dana Fabe, Public Defender, Anchorage, for appellant.

David Mannheimer, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

BRYNER, Chief Judge.

Dennis Baden appeals his conviction for attempted sexual assault in the first degree, AS 11.41.410(a) and AS 11.31.100(a). He contends that he was improperly limited in presenting evidence of the victim's prior conduct, and that the jury should have been instructed on the lesser-included offense of assault in the fourth degree, AS 11.41.-230(a). We reverse Baden's conviction.

C.M. testified at trial that she spent the evening of June 13, 1981, and the early morning hours of the following day drinking and socializing. Sometime around 5:00 a.m. she took a cab over to the apartment shared by Dennis Baden and Michael Baden. She had known Michael Baden for about five months and she wanted to talk to him about their "relationship." According to C.M., Dennis Baden met her at the door and told her that Michael was there; he then led her past some people in the kitchen and back to his room, telling her that he wanted to talk to her about Michael. Dennis Baden then pushed her in the room, entered and locked the door. He pushed her onto the bed, straddled her and pinned her arms. She told him that she wanted to get up; he said he wanted to have intercourse with her. According to C.M., she began screaming and Baden slapped her on the face, causing her nose to bleed. She testified that Baden ripped items of her clothing off, took his T-shirt off and was unzipping his pants when another occupant of the apartment, Doug Landon, knocked at the door.

Baden let Landon in. C.M. told Landon to get Baden out of the room and Landon told Baden to leave. After Baden left, C.M. pulled a sheet over herself. Landon put his arm around C.M., which scared her; she then told Landon to leave. After Landon left, C.M. got up and began to gather her clothing. As she did so, C.M. noticed that Baden was attempting to enter the room through the window. C.M. ran out of the room, then out of the apartment, carrying the remainder of her clothes.

When C.M. reached the other side of the apartment complex, she knocked at the door of Laura Huffman, whom C.M. did not know. Huffman allowed C.M. to wash the blood off her face and to call a cab from her phone. C.M. eventually left through Huffman's back door in order to avoid some of the people from Baden's apartment, who were now out in the street.

Landon testified that he was intoxicated from alcohol and LSD in the early morning hours of June 14. He did not see C.M. come into Baden's apartment. He had gone into the hallway with John Dodge and heard shuffling and screaming from Baden's bedroom. He tried the door, which was locked, and then knocked. Baden answered the door with no delay. C.M. was sitting on the bed, sobbing; she was not naked. Landon did not recall whether Baden left at this point, but he did remember putting his arm around C.M. on the bed. Landon did not recall seeing C.M. leave the apartment.

John Dodge was called to testify for the defense. He stated that the door to Baden's apartment was open, and that C.M. walked in and walked to the back of the apartment. Fifteen to twenty minutes later Dodge became curious about where Baden was. He walked to the bedroom, knocked on the door and opened it three to four inches. Doug Landon was with him. C.M. was dressed, at least wearing her blouse and panties; she was sitting up on the bed with her legs tucked up to her chest. She was not hysterical or crying and Dodge did not see any blood or tears on her face. Although Dodge did not see Baden, he believed that Baden was behind the door. Dodge left and went back to the living room. A few minutes later, Baden walked out of the hallway into the living room. Ten to twenty minutes later, Landon returned. A few minutes after that, C.M. came out wearing a blouse with a blanket around her lower body. She calmly walked out of the apartment.

Laura Huffman testified that C.M. was frightened and crying when Huffman let C.M. into her apartment. Her nose was bleeding. C.M.'s slacks were torn all the way up the inseam and her blouse was torn down the front.

Baden elected to testify. He had consumed a large amount of beer and two "hits" of LSD on June 13–14th. His memory of the events was limited. He remembered seeing C.M. in the living room and later in his bedroom. He did not remember what had happened in the bedroom. He remembered answering a knock at the bedroom door and finding Landon and possibly Dodge there. He knew that he was dressed when he answered the door. He remembered leaving the bedroom after the knock, going outside, and lying down in someone's car. Baden testified that he never made advances to C.M. and that he did not believe he intended to have sex with her.

Baden requested an instruction on the lesser-included offense of assault in the fourth degree. The argument on this instruction apparently occurred off the record; the court denied the request "as indicated in chambers." Baden contends on appeal that it was error not to give the instruction under the circumstances of this case.

AS 11.41.410(a)(1) provides:

A person commits the crime of sexual assault in the first degree if, being any age, he engages in sexual penetration with another person without consent of that person . . . .

AS 11.31.100(a) provides:

A person is guilty of an attempt to commit a crime if, with intent to commit a crime, he engages in conduct which constitutes a substantial step toward the commission of that crime.

AS 11.41.230(a)(1)[1] provides:

A person commits the crime of assault in the fourth degree if

In order to establish the crime of assault in the fourth degree, it is necessary for the state to prove beyond a reasonable doubt . . . that

1. Baden submitted an instruction which paraphrased AS 11.41.230(a)(1) as it read when it was entitled, "assault in the *third* degree": .

(1) he recklessly causes physical injury to another person . . . .

The parties agree that if there was evidence from which the jury could conclude that Baden was guilty of fourth-degree assault but not guilty of attempted first-degree sexual assault, the lesser-included instruction should have been given. *Nathaniel v. State,* 668 P.2d 851 (Alaska App., 1983); *Johnson v. State,* 665 P.2d 566, at 569 (Alaska App., 1983); *Hartley v. State,* 653 P.2d 1052, 1054 (Alaska App. 1982). The parties are not in agreement as to the elements of attempted first-degree sexual assault, however. Baden argues that application of the attempt statute to AS 11.41.410(a)(1) yields the following: a defendant must intend to commit the crime; therefore, he must intend to engage in nonconsensual sexual penetration, *i.e.,* he must intend to engage in penetration and he must intend it to be nonconsensual. The state argues convincingly that a defendant must act only "recklessly" with regard to the lack of consent. *See* AS 11.81.610(b) (the culpable mental state that must be proved with respect to a circumstance or result, if unstated in the definition of the offense, is "recklessly"); *Reynolds v. State,* 664 P.2d 621, at 625 (Alaska App., 1983). However, the state concedes that Baden must have intended to engage in sexual penetration when he ripped C.M.'s clothes in order to be guilty of attempted first-degree sexual assault.

We agree that, at the very least, Baden must have formed a specific intent to engage in sexual penetration in order to be convicted of the greater charge. We have held that, under the Revised Code, it is clear that voluntary intoxication is relevant to offenses which require that a defendant intentionally cause a result. *Neitzel v. State,* 655 P.2d 325, 330–32 (Alaska App. 1982). *See also* AS 11.81.630; AS 11.81.-900(a)(2)–(3). Given the testimony by Baden, corroborated by other witnesses, to the effect that he was extremely intoxicated by the alcohol and LSD he had consumed, the jury could have concluded that Baden was so intoxicated that he ripped C.M.'s clothes and hit her without the intent to engage in sexual intercourse.[2]

■ The state contends that the theory presented by Baden at trial was inconsistent with a finding that he committed only the fourth-degree assault. While it is true that during the course of trial Baden's counsel appeared to suggest conflicting theories of the offense, *e.g.,* that someone else (possibly Landon) ripped C.M.'s clothing and attempted to sexually assault her after Baden left the room, the most plausible defense theory was that Baden was too intoxicated to have formed the requisite intent. Where a defendant does not rely entirely upon an alibi defense, but instead takes the stand and expressly testifies that he was

Dennis Baden intentionally or recklessly caused physical injury to another person. A 1980 amendment, effective June 21, 1980, changed "third" to "fourth" and deleted the word "intentionally." Baden's offense occurred almost a year later, on June 14, 1981. Neither party argues that Judge Taylor rejected the instruction, or that he should have rejected it, on the grounds that it did not adequately state the law. We hold that the instruction requested by Baden was sufficient to preserve the issue for appeal. *See* AS 11.81.610(c) ("If acting recklessly suffices to establish an element, that element is also established if a person acts intentionally.").

2. The jury was in fact instructed at Baden's request as follows:

Our law provides that voluntary intoxication is generally not a defense to a prosecution for an offense.

However, in the crime of Attempted Sexual Assault in the First Degree with which the defendant is accused, a necessary element is the existence in the mind of the defendant of the *intent to engage in sexual penetration with another person without the consent of that person.*

If the evidence shows that the defendant was intoxicated or under the influence of drugs at the time of the alleged offense, the jury should consider his state of intoxication in determining if defendant had such intent.

If from all the evidence you have a reasonable doubt whether defendant was capable of forming such intent, you must find that he did not have such intent.

"Intoxication" includes intoxication from the use of drugs or alcohol. [Emphasis added.]

too intoxicated to remember much but does not believe he intended to sexually assault the victim, he should not be precluded from requesting a lesser-included offense instruction consistent with this testimony.

■ We must conclude that, under all the evidence, the jury could have acquitted Baden of attempted sexual assault in the first degree but convicted him of fourth-degree assault. Because Baden's request for the simple assault instruction was not granted, his conviction must be reversed.

■ While our conclusion as to the first error alleged by Baden makes consideration of the second issue unnecessary for purposes of deciding this appeal, we think that this second issue may well recur if Baden is retried. For this reason, we consider Baden's claim that he was improperly restricted in presenting evidence of C.M.'s prior conduct.

Early in C.M.'s testimony, the prosecutor moved for "a protective order against any cross-examination that would carry over to any direct testimony from defense witnesses as to the victim's alleged prior sexual conduct," and against "any questioning or testimony concerning prior times the victim may have been at the defendant's apartment." Defense counsel stated that, "without getting into the physical parameters" of C.M.'s relationship with Michael Baden, he did feel he should be allowed to ask questions about how many times she saw Michael Baden and about her condition on those occasions. The prosecutor argued that the rape shield statute, AS 12.45.045,[3] banned any reference to a victim's prior sexual conduct and that other evidence concerning C.M.'s prior visits would be irrelevant. Judge Taylor eventually ruled that no reference could be made to prior sexual conduct. Defense counsel agreed, but asked for clarification on the scope of the court's ruling, in particular whether he could ask the victim about her relationship with Michael Baden, "that door having [already] been opened, [and] without getting into the physical part of it." When asked about the relevance of this line of questioning, defense counsel first stated that he wished to establish that C.M. usually went to the Baden apartment when she was intoxicated, then stated, "I think it's valid impeachment evidence."

The prosecutor characterized questioning about intoxication as "inquiring into her sexual past," and argued that what defense counsel was really trying to suggest to the jury, based on his opening argument, was that the victim went over to see Dennis Baden because she was sexually attracted to him. Judge Taylor concluded that "prior sexual conduct appears to be what the law prohibits; relevancy is another matter," and stated that objections as to matters outside the scope of AS 12.45.045 would have to be ruled on as they arose.

As the trial continued, Judge Taylor was required to rule on the propriety of various

---

**3.** AS 12.45.045 provides:

(a) In prosecutions for the crime of sexual assault in any degree or an attempt to commit sexual assault in any degree, evidence of the complaining witness' previous sexual conduct shall not be admitted nor reference made to it in the presence of the jury except as provided in this section. When the defendant seeks to admit the evidence for any purpose, he may apply for an order of the court at any time before or during the trial or preliminary hearing. After the application is made, the court shall conduct a hearing in camera to determine the admissibility of the evidence. If the court finds that evidence offered by the defendant regarding the sexual conduct of the complaining witness is relevant, and that the probative value of the evidence offered is not outweighed by the

probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy of the complaining witness, the court shall make an order stating what evidence may be introduced and the nature of the questions which shall be permitted. The defendant may then offer evidence under the order of the court.

(b) In the absence of a persuasive showing to the contrary, evidence of the complaining witness' sexual conduct occurring more than one year before the date of the offense charged is presumed to be inadmissible under this section.

(c) In this section "complaining witness" means the alleged victim of the crime charged, the prosecution of which is subject to this section.

lines of questioning pursued by the defense. For purposes of this appeal, the questions prohibited by the court can be divided into two groups: those which were intended to establish that C.M. had previously visited the apartment in the early morning hours and in an intoxicated condition; and those intended to establish that, during these visits, C.M. made sexual advances toward Dennis Baden. For instance, Baden sought to introduce the testimony of witnesses who had seen C.M. arrive at the apartment intoxicated on more than one occasion. He also sought to testify on his own behalf that C.M. had grabbed his buttocks and told him he had "nice looking legs" during at least one of these visits. The court rejected all the proffered testimony on the grounds of relevance, although Baden was able to testify about C.M.'s sexual advances before the prosecutor objected.

We note, first, that Baden failed to request an *in camera* hearing before introducing any evidence of C.M.'s prior sexual conduct. Had he done so, the issue of what constitutes "sexual conduct" for purposes of AS 12.45.045 would have been more squarely before the court, and the scope of the court's order might have been clearer. More importantly, as the state points out, the offers of proof made by Baden as to the relevance of both lines of questioning were for the most part inadequate. For example, Baden's counsel stated that some of the evidence was relevant for impeachment purposes, but did not elaborate. The court had already stated that it would allow all evidence showing that C.M. was intoxicated

on June 14, 1982. It can be surmised that Baden was actually seeking to introduce the evidence of intoxication on *prior* visits and sexual advances by C.M. to suggest a sexual connection between either C.M. and Michael Baden or C.M. and Dennis Baden. In either case, while the evidence might have been relevant to Dennis Baden's state of mind on June 14,[4] the true theory of relevance should have been presented to the trial court so that it could make a determination as to whether the probative value of this evidence was not "outweighed by the probability that its admission will create undue prejudice, confusion of the issues, or unwarranted invasion of the privacy" of the victim, pursuant to AS 12.45.045(a).

Upon retrial, Baden's counsel should move for an *in camera* hearing before presenting any evidence relating to C.M.'s prior sexual conduct. *See Padgett v. State,* 590 P.2d 432, 435 (Alaska 1979). We express no opinion as to the admissibility of any particular item of evidence or line of questioning upon retrial.

Based upon our conclusion that the jury should have been instructed on assault in the fourth degree, Baden's conviction is REVERSED.[5]

---

4. *See, e.g., Reynolds v. State,* 664 P.2d 621 (Alaska App., 1983) (the *mens rea* element of the offense of sexual assault in the first degree requires proof that the perpetrator of the offense recklessly disregarded his victim's lack of consent).

5. If the state elects not to reprosecute Baden for attempted first-degree sexual assault, the court may, on remand, enter judgment against Baden on the lesser-included offense. *Nix v. State,* 624 P.2d 823, 825 (Alaska App.1981).