James D. NATHANIEL, Appellant,

v.

STATE of Alaska, Appellee.

Nos. 6482, 6864.

Court of Appeals of Alaska.

Sept. 2, 1983.

James H. Cannon, Asst. Public Defender, Fairbanks, Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Bill D. Murphree, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Elizabeth H. Sheley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

James Nathaniel was convicted of sexual assault in the first degree. Former AS 11.41.410(a)(1). He was sentenced by Judge Blair to twenty years' imprisonment. Following this conviction, his probation on a prior conviction for assault with a dangerous weapon, former AS 11.15.220, was revoked and the remaining two years of that sentence were imposed by Judge Hodges to be served consecutively to the sexual assault sentence. Nathaniel appeals challenging his conviction, the sentence for the sexual assault, and the consecutive sentence for the probation violation. Nathaniel challenges the sexual assault conviction on two grounds. First, he contends that the trial court erred in refusing to give a lesser-included offense instruction on fourth-degree assault. AS 11.41.230. Second, he contends that the trial court erred in failing to grant his request for an instruction commenting on evidence of the victim's failure to make a prompt complaint. We reverse.[1]

## FACTS

D.B. testified that she lived with her one-year-old child and E.J., her boyfriend, in Fairbanks. On May 3, 1981, E.J. was work-

---

1. Our decision to reverse the sexual assault conviction makes it unnecessary to address Na-   thaniel's complaints about sentencing.

ing on the North Slope. Before leaving town, E.J. informed James Nathaniel, his cousin, that he would be away. According to D.B., in the early morning hours, she was awakened by her child. While D.B. took care of the child, Nathaniel knocked on the apartment door. D.B. recognized Nathaniel as E.J.'s relative who she had previously met. As D.B. was momentarily distracted by her child, Nathaniel entered the apartment.

After a brief conversation, Nathaniel offered D.B. fifty dollars for sexual intercourse. D.B. thought he was joking and responded, "Oh, get out of here." According to D.B., Nathaniel then attacked her. He threw her on the couch, jumped on top of her, began hitting her and pulling her hair. Nathaniel eventually ceased, upon D.B.'s request, so that D.B. could place her child in the playpen. Nathaniel then demanded that D.B. undress; she refused. Nathaniel resumed hitting D.B. in the face repeatedly with his fists and pulling out her hair. He also struck her on all sides of her body. D.B. tried to yell for help but Nathaniel prevented her from doing so by covering her mouth. Nathaniel threatened to harm D.B. and her child if D.B. would not submit to intercourse with him. D.B. testified that, ultimately, Nathaniel succeeded in penetrating D.B. despite her struggle and protests. Nathaniel ordered D.B. to tell him she loved him. When she refused, he punched her in the mouth causing it to bleed. When Nathaniel temporarily desisted, D.B. grabbed her child and ran out the back door, intending to go to a neighbor's house. Nathaniel made no attempt to stop her and also left the apartment. Seeing that Nathaniel had left, D.B. reentered the apartment, locked the door, and attempted to calm her child. There was no telephone in the apartment.

D.B. testified she was afraid to immediately report the offense because she thought E.J. would be mad at her and because Nathaniel had threatened to harm her if she complained to the police. On cross-examination, D.B. conceded that she had not told the police, when she finally called them to the apartment, or informed the grand jury of Nathaniel's threats. Roughly six hours after the incident, at approximately 10:30 a.m., Nora John, a friend of D.B., visited D.B. at her apartment. D.B. told John that she had been beaten. D.B. said she did not know the assailant and did not mention that she had been sexually assaulted. At approximately 4:30 p.m. that day, D.B. went to another friend's home to telephone the police. The police responded to D.B.'s call, observed swelling and bruises on her face and hair missing, and took her to the hospital. Dr. William H. Doolittle, who examined D.B., noted bruises and a small laceration on her face which had been inflicted within twenty-four hours. A pelvic examination revealed sperm, which indicated intercourse within the previous twenty-four hours, but the exam did not show vaginal injury. Dr. Doolittle testified that in women who have had children forced intercourse can occur without injury.

Nathaniel proposed two jury instructions which were not given. First, he requested an instruction on assault in the fourth degree as a lesser-included offense and, second, he requested an instruction that evidence of a "fresh" complaint can be considered corroboration of the victim's testimony, while the lack of a "fresh" complaint could be considered as inconsistent with her testimony.

## LESSER–INCLUDED OFFENSE INSTRUCTION

Former AS 11.41.410 described first-degree sexual assault:

(a) A person commits the crime of sexual assault in the first degree if,

(1) being any age, he engages in sexual penetration with another person without consent of that person.

"Without consent" means that a person with or without resisting, is coerced by the use of force against a person or property, or by the express or implied threat of imminent death, imminent physical injury, or imminent kidnapping to be inflicted on anyone . . . .

AS 11.41.470(3). AS 11.41.230 describes fourth-degree assault:

(a) A person commits the crime of assault in the fourth degree if

(1) he recklessly causes physical injury to another person.

AS 11.81.900(b)(40) further specifies that " 'physical injury' means physical pain or an impairment of physical condition."

Nathaniel argues that the jury could have found that he went to D.B.'s residence, beat her up, and then left without any sexual contact, or that after beating her, they resolved their differences amicably and engaged in consensual sexual intercourse. He concedes that he did not testify and that there is no direct evidence in the record that D.B. consented to sexual intercourse. He argues, nevertheless, that the jury could have inferred consent from the circumstances, including the absence of injury to D.B.'s vagina, her failure to mention the sexual assault to John, and by the fact that she failed to report the sexual assault until twelve hours after it had allegedly occurred.

■ The state relied on evidence that Nathaniel attacked and physically beat D.B. in order to prove that Nathaniel engaged in sexual intercourse with D.B. without her consent. Therefore, under the cognate theory of lesser-included offenses, fourth-degree assault was a lesser-included offense of first-degree sexual assault. *Elisovsky v. State,* 592 P.2d 1221, 1226 (Alaska 1979).[2] Before a lesser-included offense instruction was necessary, however, it would have to be determined that Nathaniel's trial involved a disputed fact that was necessary to establish the greater offense, but not the lesser-included offense. In this case, first-degree sexual assault is distinguishable from fourth-degree assault primarily in requiring proof of nonconsensual sexual intercourse for the greater offense. The relevant question in determining whether Nathaniel was entitled to a lesser-included offense instruction on fourth-degree assault is thus whether, assuming the state established that Nathaniel committed the fourth-degree assault, there was still a dispute in the evidence as to whether Nathaniel had nonconsensual sexual intercourse with D.B.

■ A threshold issue raised by this question is the amount of proof required before a fact must be deemed disputed for purposes of deciding if a lesser-included offense instruction is necessary. In *Christie v. State,* 580 P.2d 310, 314–15 (Alaska 1978), the Alaska Supreme Court applied the "some evidence" standard to determine if a request for a jury instruction on the defense of insanity should have been granted. Discussing the "some evidence" test, the court stated:

We hold that there is "some evidence" of insanity, sufficient to raise the issue, when the evidence presented is more than a scintilla but less than that which would compel a reasonable doubt as a matter of law. In deciding whether there is "some evidence" of insanity, the trial judge is not to impinge upon the jury's responsibility to determine credibility of witnesses. Rather, the judge must determine whether a reasonable juror *could* entertain a reasonable doubt with respect to the accused's sanity.

When the "some evidence" test, as we have defined it, has been met, a defendant is entitled to an insanity instruction .... Thus, the ultimate determination of the defendant's criminal responsibility remains with the trier of fact.

---

**2.** Fourth-degree assault requires physical injuries to the victim. First-degree sexual assault, in contrast, occurs if the victim is coerced by force or the threat of force, but does not necessarily require proof of physical injuries. *Woods v. State,* 667 P.2d 184 at 187 (Alaska, 1983). For this reason some jurisdictions having similar statutes have held that fourth-degree assault is not a lesser-included offense of first-degree sexual assault. *See, e.g., State v.*

*Bourn,* 421 A.2d 1281 (Vt.1980). These jurisdictions utilize the statutory elements test for lesser-included offenses. In contrast, Alaska uses the cognate theory where the state relies on evidence of physical violence to establish lack of consent. If that violence results in physical injuries then fourth-degree assault is a lesser-included offense under the cognate theory.

*Id.* at 315 (citation omitted; emphasis in original). This court has consistently applied the same definition of "some evidence" to decide whether a defendant should be entitled to jury instructions on other types of defenses. *See, e.g., Paul v. State,* 655 P.2d 772, 775–78 (Alaska App. 1982) ("some evidence" test applicable to self-defense). We believe that the same standard must be applied to determine whether instructions should be given on lesser-included offenses. *See Christie v. State,* 580 P.2d at 316–20. *See also, Hopper v. Evans,* 456 U.S. 605, 102 S.Ct. 2049, 72 L.Ed.2d 367 (1982); *Keeble v. United States,* 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844, 847 (1973); *Stevenson v. United States,* 162 U.S. 313, 314, 16 S.Ct. 839, 40 L.Ed. 980, 981 (1896); *United States v. Busic,* 592 F.2d 13, 24 (2d Cir.1978); *United States v. Whitaker,* 447 F.2d 314, 321 (D.C.Cir.1971).

■ In order to satisfy the "some evidence" test, it is not necessary that the defendant testify or even offer direct evidence in his own behalf. Some evidence establishing a dispute as to a factual issue may arise from a weakness in the prosecution's evidence or from impeachment of its witnesses. *See, e.g., United States v. Comer,* 421 F.2d 1149, 1155 (D.C.Cir.1970); *Driscoll v. United States,* 356 F.2d 324, 326–29 (1st Cir.1966), *vacated on other grounds,* 390 U.S. 202, 88 S.Ct. 899, 19 L.Ed.2d 1034 (1968). Similarly, circumstantial evidence presented as part of the state's case-in-chief may give rise to some evidence of a disputed fact. *See, e.g., United States v. Johnson,* 637 F.2d 1224, 1232–34 (9th Cir.1980); *Commonwealth v. Spear,* 2 Mass.App. 687, 319 N.E.2d 455, 457–59 (1974). Thus, if there was some evidence in the record to provide reasonable support for a jury finding that D.B. might have consented to sexual intercourse with Nathaniel or that Nathaniel might not have engaged in sexual intercourse with D.B. at all, then Nathaniel was entitled to an instruction on fourth-degree assault.

■ We think the uncontroverted evidence of Nathaniel's physical attack on D.B., which constituted a fourth-degree assault, was compelling in nature and not subject to reasonable dispute. If the jury believed that, after attacking D.B., Nathaniel had sexual intercourse with her, we would have difficulty concluding that the jury could reasonably have found the act of intercourse to have been consensual. *Hartley v. State,* 653 P.2d 1052, 1054–55 (Alaska App.1982). However, we believe that the evidence at trial as to whether Nathaniel actually engaged in sexual intercourse with D.B. after attacking her was sufficiently disputed to require a lesser-included offense instruction.

Medical proof at trial established only that D.B. apparently had sexual intercourse with someone within approximately twenty-four hours prior to her examination by a physician. The examination disclosed no evidence of trauma to D.B.'s vagina that might have indicated forcible intercourse. Moreover, D.B. failed to make a prompt report of the sexual assault and waited a substantial period of time before accusing Nathaniel. These factors, standing alone, might not suffice to constitute some evidence that Nathaniel had not engaged in sexual intercourse with D.B. after physically attacking her. They became significant, however, in light of the testimony of Nora John, who was called by Nathaniel as a witness at trial, and whose testimony in effect formed the basis of Nathaniel's defense. John's testimony was that D.B. stated that she had been beaten up, but that D.B. failed to make any reference to a sexual assault. In applying the "some evidence" test to these facts, we must consider them in their totality and view them in the light most favorable to the defense. When the totality of the evidence is considered in this manner, we believe that fair-minded jurors could reasonably have concluded that a reasonable doubt existed as to whether Nathaniel did in fact have sexual intercourse with D.B.

The state points out that John was substantially impeached by testimony of police officers. The officers testified that John, Nathaniel's cousin, originally told them that

D.B. told John that Nathaniel had raped and beaten her. John also conceded on cross-examination that she did not want to say anything that would make Nathaniel go to jail. The state also argues that there are a number of reasons why D.B. might have told John only about the physical assault, without mentioning the sexual assault, even though she had been sexually assaulted by Nathaniel. We do not take issue with the state's assertions. However, the jury might also have found a reasonable possibility that D.B. failed to mention a sexual assault to John because she had not in fact been sexually assaulted by Nathaniel. The jury should have been permitted to choose among the possible explanations for D.B.'s statement to John and for the other circumstances raising the possibility that D.B. did not have sexual contact with Nathaniel. We conclude that some evidence existed that might have justified the jury in finding Nathaniel guilty of fourth-degree assault, but not guilty of first-degree sexual assault. We therefore hold that the trial court's failure to give a lesser-included offense instruction on fourth-degree assault requires that Nathaniel's convictions be reversed.

Our decision would not preclude the trial court from giving other lesser-included offense instructions, *e.g.*, attempted sexual assault in the first degree, if requested. We merely hold that the evidence in this case warranted an instruction on fourth-degree assault upon Nathaniel's timely request.

## "FRESH COMPLAINT" INSTRUCTION

Nathaniel argues that the trial court erred in failing to give the following instruction:

> Evidence of "fresh complaint," that the alleged victim notified law enforcement officers or other persons soon after an alleged sexual assault, can be considered by you as evidence corroborating the victim's testimony.
>
> On the other hand, evidence that no fresh complaint was made can be considered by

you as rebuttal of the alleged victim's testimony.

The trial judge rejected this instruction in part, concluding that it would amount to an impermissible comment on the evidence.

At common law trial judges instructing juries summarized the evidence introduced by the prosecution and defense and frequently expressed an opinion regarding the weight of the evidence and the credibility of the witnesses. To a large extent, this procedure is still followed in England. *See, e.g.,* Lord Devlin, *Trial by Jury* 116–20 (1966). Arguably, the common-law rule continues in the federal courts. *Cf., Capital Traction Company v. Hof,* 174 U.S. 1, 13–16, 19 S.Ct. 580, 585–586, 43 L.Ed. 873, 878 (1899) (commenting on the evidence recognized to be within the trial judge's discretion; this case has not been overruled). The proponents of the Federal Rules of Evidence suggested a proposed Rule 105 codifying this power. The rule provided:

> After the close of the evidence and arguments of counsel, the judge may fairly and impartially sum up the evidence and comment to the jury upon the weight of the evidence and the credibility of the witnesses, if he also instructs the jury that they are to determine for themselves the weight of the evidence and the credit to be given to the witnesses and that they are not bound by the judge's summation or comment.

This proposal engendered quite a bit of criticism and as a result the proposed rule was not adopted. *See* 21 C. Wright & K. Graham, *Federal Practice and Procedure: Evidence* §§ 5081–5087, at 382–438 (1977).

Alaska's court rules are largely based upon the federal rules. The extent to which a trial judge may summarize or comment on the evidence, however, has never been resolved by an Alaska appellate court. Professor Stephen A. Saltzburg, reporter for the proposed Alaska Rules of Evidence, proposed Alaska Evidence Rule 107 which would have permitted a trial judge to summarize the evidence but not to comment on that evidence. S. Saltzburg, *Proposed Alaska Rules of Evidence, Reporter's Comments*

107 (1976). The proposed rule generated opposition. The supreme court did not adopt the rule. The propriety of judicial comment on the evidence is thus in doubt.

 The trial judge was undoubtedly correct in holding that a cautionary instruction which disparages one witness' testimony in comparison with that of another is a "comment on the evidence." *See, e.g., Burke v. State,* 624 P.2d 1240, 1254–55 (Alaska 1980) (rejecting an instruction based upon Lord Hale's dictum that rape is easy to charge and difficult to disprove); *Christian v. State,* 555 S.W.2d 863, 865 (Tenn.1977) (rejecting cautionary instruction disparaging alibi evidence). Former Criminal Rule 30(b)(2) provided for a number of cautionary instructions disparaging certain kinds of evidence. That rule was ultimately repealed and the matter of instructions governing the credibility of witnesses left to the discretion of the trial court. *See, e.g., Price v. State,* 647 P.2d 611 (Alaska App.1982). We note that the instruction proposed by *Nathaniel* is not included in the Pattern Jury Instructions for use in criminal cases proposed by the committee on Pattern Jury Instructions (Criminal) appointed by the Alaska Supreme Court. *See Alaska Pattern Jury Instructions (Criminal)* (1980). It is not necessary for us to determine whether and to what extent Alaska trial judges may comment on the evidence. We agree with the following comment by the District of Columbia Court of Appeals in *Coleman v. United States,* 379 A.2d 951, 955 (D.C.App.1977):

The determination of whether specialized cautionary instructions regarding the weight and credibility of the testimony of specific witnesses or classes of witnesses should be given is vested within the discretion of the trial court. Where the jury is adequately instructed generally with respect to the credibility of all witnesses, the trial court may properly refuse to deliver specialized instructions focusing on specific witnesses or classes of witnesses, absent quite special circumstances.

(Citations omitted.) *Accord Williams v. State,* 652 P.2d 478, 480 (Alaska App.1982) (sustaining trial judge's failure to give *Telfaire*[3] instruction).

 The jury was instructed regarding its duty to determine the credibility of witnesses. D.B. was fully cross-examined regarding any delay in complaining about the alleged attack. The jury heard the testimony of John and was free to evaluate the respective credibility of John and D.B. Finally, Nathaniel was permitted to argue his contention that D.B.'s delay in reporting the alleged sexual assault adversely effected her credibility. Under these circumstances, the trial judge did not abuse his discretion in refusing to give the requested instruction. *State v. Berry,* 117 N.H. 352, 373 A.2d 355, 357 (1977).

The judgment of the superior court is REVERSED and REMANDED.[4]

3. *See United States v. Telfaire,* 469 F.2d 552, 558 (D.C.Cir.1972).

4. If the state elects not to reprosecute Nathaniel for first-degree sexual assault, the court may, on remand, enter judgment against Nathaniel on the lesser-included offense. *Nix v. State,* 624 P.2d 823, 825 (Alaska App.1981).