**Rian M. DOLCHOK, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–1794.**

Court of Appeals of Alaska.

Nov. 10, 1988.

Sen K. Tan, Asst. Public Defender, Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Grace Berg Schaible, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Rian M. Dolchok was convicted of sexual assault in the first degree following a jury trial. AS 11.41.410(a)(1). He appeals his conviction, arguing that the trial court erred in refusing to instruct the jury on the lesser-included offense of assault in the fourth degree.

The victim, R.R., was the sixteen-year-old twin sister of Dolchok's girlfriend. On July 27, 1985, the two sisters, Dolchok, and another young man went to a birthday party. All four of them eventually returned to Dolchok's home later that evening. Dolchok procured blankets and pillows for R.R. and the other young man to sleep upstairs in the living room. R.R. prepared to sleep on the couch, while the other man prepared to sleep on the living room floor. Meanwhile, Dolchok and R.R.'s sister went downstairs to Dolchok's room to sleep. While R.R. and the other man were talking in the living room, R.R. heard a door slam, and realized that her sister had left. Apparently, Dolchok and R.R.'s sister had argued over Dolchok's sexual attraction to R.R. R.R. asked Dolchok why her sister had left and why he did not go out to get her. At this point the version of the facts offered by the defendant and by the state differs significantly.

R.R. testified to the following facts. After her sister left, Dolchok took the other man aside to talk to him; shortly thereafter the man left. R.R. talked to Dolchok for approximately half an hour about her sister, and then he asked her to come downstairs to watch a movie. R.R. declined, but Dolchok grabbed her by the wrist and tried to pull her downstairs. She agreed to view the movie with him. They sat on his bed and watched the movie for about twenty minutes when R.R. decided to go upstairs to sleep. He suggested that she sleep on his bed, and said that he would go upstairs and sleep on the couch when the movie was over. R.R. grabbed a blanket and went to sleep on the bed, on top of the sheets.

R.R. woke up around 4:00 in the morning, with Dolchok's arms around her. He was nude. R.R. told Dolchok to let go of her, but he refused. Dolchok then draped his leg over both of R.R.'s legs. She told him to get off of her, and said that she was going to scream. They wrestled for about ten minutes. R.R. kept trying to scream, but Dolchok covered her mouth with his hand. He eventually removed her clothes. Dolchok then grabbed R.R. around her neck, partially choking her, and with her head hanging off the bed, Dolchok raped her. R.R. testified that she struggled and cried during the act of intercourse. After Dolchok completed the act, he stopped

choking R.R. and released her. She got up and told him that he had just raped her. Dolchok responded that he would kill her if she told anyone.

This version of the facts is consistent with the testimony of Anchorage Police Officer Laren Zager. Zager testified that early on the morning of July 28, Dolchok came to the Anchorage Police Station. Dolchok wanted to turn himself in because he believed he had committed statutory rape. Officer Zager asked Dolchok his age and the age of the victim. Dolchok responded that he was eighteen and that R.R. was sixteen. Officer Zager looked up the statutory elements of sexual abuse of a minor, and discovered that Dolchok had not committed statutory rape. He conveyed this to Dolchok, but Dolchok did not appear relieved. Instead, Dolchok said, "She didn't want to have sex with me." At this point, Zager realized that there may have been another crime committed, and he proceeded to question Dolchok further. The interview was not recorded, because Officer Zager did not have a tape recorder at his disposal.

Dolchok told Officer Zager that he and his girlfriend had an argument because Dolchok was interested in having sex with her twin sister, R.R. Dolchok said his girlfriend "stormed out of the house," and then he talked R.R. into staying at his house with him to watch television. He told Zager that after R.R. fell asleep, he decided to have sex with her. Dolchok said that he had to hold R.R. down to have sex with her, and that she kept yelling, "no, no, no" before and during intercourse. Dolchok told Zager that R.R. cried while he was having sex with her and that she was angry with him when he finally let her go.

Dolchok's testimony at trial was substantially different from R.R.'s testimony and his confession to Officer Zager. According to Dolchok, both he and R.R. were under the covers in his bed watching the movie. They both fell asleep, and he woke up with his arm around her. R.R. then woke up, and they started kissing one another. They engaged in petting, oral sex, and genital intercourse. Dolchok claimed that at no time did R.R. indicate any resistance or displeasure with the sexual activity. Dolchok testified that they removed each other's clothes, but that he used no forceful action and did not rip off her clothes. He also testified that he did not use any type of force to penetrate R.R.'s vagina.

Dolchok also testified that only after they finished having sex and R.R. got dressed did she accuse him of raping her. Dolchok stated that he was shocked, and that he asked R.R. not to tell her sister that he had slept with her. Dolchok then grew concerned that he may have committed statutory rape because of R.R.'s age. He testified that he went to the police station to turn himself in for statutory rape, but he denied confessing to forcible intercourse.

After the court requested jury instructions, Dolchok asked that the jurors be instructed that they could convict him for the lesser-included offense of assault in the fourth degree. Superior Court Judge Roy H. Madsen denied Dolchok's request, relying on *Hartley v. State*, 653 P.2d 1052 (Alaska App.1982).

## DISCUSSION

When a timely request is made, the trial court must instruct the jury on offenses which are necessarily included in the offense charged. *Comeau v. State*, 758 P.2d 108, 109 (Alaska App.1988). The failure to do so justifies reversal of a conviction on the offense charged. *Christie v. State*, 580 P.2d 310, 318 (Alaska 1978). Alaska uses the cognate approach for determining whether a lesser offense is necessarily included in the offense charged. In contrast to the statutory elements approach, "[t]he cognate approach concentrates more broadly and realistically on the facts charged in the complaint or indictment and on the evidence actually presented at trial." *Comeau*, 758 P.2d at 109. Therefore, we must consider the different versions of the offense presented to the jury, as well as the theories of the case presented by both the state and the defense.

The state's theory was that this was a forcible acquaintance rape. This theory was supported by the victim's testimony and by the testimony of Officer Zager. Dolchok's theory of defense was that R.R. consented to the act of sexual intercourse or, in the alternative, that she failed to manifest her lack of consent. To support his theory, Dolchok testified, and he introduced testimony of the doctor who examined R.R. at the emergency room. The doctor testified that although R.R. complained of pain all over, especially in the chest area, he found no visible bruises or broken bones through x-rays. The doctor did, however, note in his report a possible diagnosis of a chest contusion or fractured rib.

A person is guilty of sexual assault in the first degree if that person "engages in sexual penetration with another person without consent of that person." AS 11.-41.410(a)(1). In *Reynolds v. State*, 664 P.2d 621, 625 (Alaska App.1983), this court further defined the offense. We stated that "[i]n order to prove a violation of AS 11.41.410(a)(1), the state must prove that the defendant knowingly engaged in sexual intercourse and recklessly disregarded his victim's lack of consent." *Id.*

A person is guilty of assault in the fourth degree if:

    (1) that person recklessly causes physical injury to another person;

    (2) with criminal negligence that person causes physical injury to another person by means of a dangerous instrument; or

    (3) by words or other conduct that person recklessly places another person in fear of imminent physical injury.

AS 11.41.230(a).

In *Hartley v. State*, 653 P.2d 1052 (Alaska App.1982), the defendant was charged and convicted of sexual assault in the first degree and burglary in the first degree. We rejected the defendant's argument that he was entitled to lesser-included offense instructions on simple assault, attempted sexual assault in the first degree, and sexual assault in the second degree. *Id.* at 1054–55. Hartley's defense at trial was

consent. He argued that the jury could have found that he had assaulted the victim, but that after the assault, the victim could have forgiven him and consented to the sexual contact. We held that this factual scenario did not constitute a true lesser-included offense, but instead amounted to separate offenses. We stated, "A true lesser-included offense requires some evidence which would support a jury finding that the state did not prove one or more elements of a greater offense, thereby permitting the jury to find the lesser offense." *Id.* at 1054.

In a subsequent case, *Nathaniel v. State*, 668 P.2d 851 (Alaska App.1983), we found that the trial court erred in failing to give a lesser-included instruction on fourth-degree assault in a trial for first-degree sexual assault. *Id.* at 856. The state's evidence showed that the defendant had attacked and beat the victim. We noted that because Alaska uses the cognate theory in determining whether an offense is necessarily included in another offense, the state's reliance on evidence of physical violence to establish the lack of consent requires that fourth-degree assault be included in the offense of first-degree sexual assault. Although we expressed doubt as to whether a jury could reasonably find that a victim consented to sexual intercourse immediately after a violent assault, we found that the "evidence at trial as to whether [the defendant] actually engaged in sexual intercourse with [the victim] after attacking her was sufficiently disputed to require a lesser-included offense instruction." *Id.* at 855.

In contrast, Dolchok does not dispute that he engaged in sexual intercourse with R.R. Instead, he argues that he could be guilty of assault in the fourth degree if he recklessly committed an assault, but at the same time, he could not be guilty of sexual assault in the first degree if he did not recklessly disregard R.R.'s lack of consent to sexual intercourse. He contends that *Hartley* was wrongly decided as it equates assault with coercion and lack of consent. Because *Hartley* was decided before *Reynolds*, Dolchok posits that *Hartley* failed to

address the third element of sexual assault, whether the defendant recklessly disregarded the alleged victim's lack of consent.

Dolchok argues that the jury could have concluded that he was initially "too rough," but that R.R. did not communicate her lack of consent about sexual relations to him. Therefore, he would not have been recklessly disregarding her lack of consent, although he may have been guilty of assault in the fourth degree.[1]

The state responds that Dolchok is not recognizing the "recklessness" and "lack of consent" elements of fourth-degree assault. Alaska Statute 11.41.230(a)(1) requires that the person recklessly cause physical injury to another person. Alaska Statute 11.81.900(a)(3) provides:

> [A] person acts "recklessly" with respect to a result or to a circumstance ... when the person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists; the risk must be of such a nature and degree that disregard of it constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation[.]

The state also argues that consent is a defense to assault as well as to sexual assault. *See* R. Perkins and R. Boyce, *Criminal Law* 154 (3rd ed. 1982); *Hartley*, 653 P.2d at 1054. Therefore, the state posits, when two people consent to rough sexual activity, one is not necessarily guilty of fourth-degree assault if the other suffers a physical injury so long as the injury suffered was within the scope of the consent.

Thus, the state argues that Dolchok would have to demonstrate for the jury that he did not recklessly disregard R.R.'s lack of consent to sexual intercourse, but that he did recklessly disregard a substantial and unjustifiable risk that he might be inflicting physical injury on R.R. without her consent. Our decision in this case makes it unnecessary for us to decide whether a person may "consent" to a criminal physical assault, and if so, under what circumstances. *See* Annotation: *Consent as Defense to Charge of Criminal Assault and Battery*, 58 A.L.R. 3rd 662 (1974). Neither of these issues was decided in *Hartley*, and we see no reason to decide them now.

The trial court must give an instruction on a lesser offense if "a finding of guilt on the greater offense would be inconsistent with acquittal on the lesser, and there is a disputed fact that distinguishes the greater offense from the lesser...." *Marker v. State*, 692 P.2d 977, 980 (Alaska App.1984). Considering R.R.'s testimony in this case, a finding of guilt on the sexual assault offense would be inconsistent with an acquittal on a fourth-degree assault charge. The issue is whether there was some evidence of a disputed fact to distinguish sexual assault from assault in the fourth degree. *Id.* *See also Baden v. State*, 667 P.2d 1275, 1278–79 (Alaska App.1983) (evidence that defendant lacked specific intent to sexually assault victim warranted lesser included instruction on assault in fourth degree in attempted sexual assault prosecution).

In order to prevail, Dolchok must show that there was "some evidence" that R.R. consented to sexual intercourse, or that Dolchok did not recklessly disregard R.R.'s lack of consent, but that he did physically assault R.R. without her consent. We discussed the definition of "some evidence" in *Nathaniel*, noting that the evidence presented must be "more than a scintilla but less than that which would compel a reasonable doubt as a matter of law." *Nathaniel*, 668 P.2d at 854 (quoting *Christie v. State*, 580 P.2d 310, 315 (Alaska 1978)). We stated that the defendant need not

---

1. It appears that Dolchok is arguing that a woman might lead a man to reasonably believe that she was willing to engage in sexual intercourse with him while at the same time making it clear to him that she would not permit him to physically abuse her. In such circumstances, Dolchok seems to conclude, if he physically abused her he might be found by a reasonable jury to have recklessly disregarded his partner's lack of consent to physical abuse without necessarily recklessly disregarding her lack of consent to the sexual intercourse.

present the evidence, but the evidence may arise from a weakness in the prosecution's evidence, impeachment of the prosecution's witnesses, or as circumstantial evidence presented as part of the state's case-in-chief. *Nathaniel,* 668 P.2d at 855. In *Nathaniel,* the evidence as to whether intercourse had occurred was sufficiently in dispute to require the lesser-included offense instruction for fourth-degree assault.

■ Here, there is no dispute that sexual intercourse occurred. The only dispute is whether or not it was consensual. The jury was presented with two versions of the facts. Dolchok's testimony at trial supported his theory that he used no force and that the act of intercourse was consensual. On the other hand, Dolchok's statements to Officer Zager and R.R.'s testimony presented a scenario in which the entire act of intercourse was forcible. Dolchok's assaultive behavior described by R.R. at trial consisted of restraining her while taking her clothes off and raping her. There is

nothing in R.R.'s testimony that would permit a reasonable juror to infer that R.R. consented to sexual intercourse, but that she did not consent to the forceful behavior accompanying it. If a jury found that this conduct constituted assault, it could not reasonably find that it did not constitute a reckless disregard for her lack of consent to sexual intercourse. *See Nathaniel,* 668 P.2d at 855. We therefore find that Judge Madsen did not abuse his discretion in refusing to instruct the jury on the lesser-included offense of assault in the fourth degree. *See Johnson v. State,* 665 P.2d 566, 569 (Alaska App.1983).[2]

The conviction is AFFIRMED.

---

2. Dolchok testified that he forcibly escorted a resisting R.R. down the stairs to watch television. It was sometime thereafter that Dolchok contends that consensual sexual intercourse occurred. If forcing R.R. to go downstairs constituted a fourth-degree assault, but did not influence R.R.'s decision whether or not to have intercourse with Dolchok, it was the kind of separate offense discussed in *Hartley,* which would not be a lesser offense included within the charge of sexual assault presented to the jury. Alternatively, if R.R. had sexual relations with Dolchok out of fears generated by the earlier assault, then she did not "consent" to the sexual intercourse.